**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

**JANE DOE,**

**Plaintiff,**

**v.**

**TEXAS CHRISTIAN UNIVERSITY,**

**Defendant.**

**Case No.: 1:25-cv-2299**

**DEFENDANT TEXAS CHRISTIAN UNIVERSITY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE**

Jason R. Waters (VSB No. 73887)
Lauren E. Gilman (VSB No. 101558)
Nicole K. Rocha (VSB No. 100669)
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
8444Westpark Drive – Suite 510
McLean, VA 22102-5102
(703) 245-9300 (telephone)
(703) 245-9301 (facsimile)
Jason.Waters@wilsonelser.com
Lauren.Gilman@wilsonelser.com
Nicole.Rocha@wilsonelser.com
*Counsel for Defendant Texas Christian University*

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 2

ARGUMENT .......... 3

I. Virginia Lacks Personal Jurisdiction Over TCU .......... 4

A. General Jurisdiction Does Not Exist because TCU is Not "At-Home" in Virginia. .......... 5

B. Specific Jurisdiction Does Not Exist Because Jane's Claims Do Not Arise Out of TCU's Virginia Contacts. .......... 6

i. TCU did not purposefully avail itself of the privilege of conducting activities in Virginia. .......... 7

ii. Jane's claims do not arise out of the Defendant's activities. .......... 8

iii. The exercise of personal jurisdiction is not constitutionally reasonable. .......... 9

iv. The parties' alleged agreement to mediate this dispute in Virginia does not provide a basis for personal jurisdiction. .......... 11

II. The Eastern District of Virginia is an Improper Venue. .......... 12

III. Alternatively, Transfer to the Northern District of Texas is Appropriate .......... 13

A. Transfer Furthers the Interests of Justice under Section 1404(a). .......... 13

B. Jane's Selection of Virginia as the Venue Should be Given Little Weight. .......... 14

C. Transfer of this Lawsuit Benefits Witness Convenience, Access, and the Convenience of the Parties .......... 15

IV. Jane Fails to State a Claim for Which She is Entitled to Relief. .......... 16

A. Jane Fails to State a Claim for a violation of the Virginia Consumer Protection Act. .......... 16

i. The VCPA does not apply. .......... 16

ii. Jane's VCPA claim does not meet the heightened pleading standard pursuant to Rule 9(b). .................................................... 18

B. Jane Fails to State a Claim for Fraud and Fraudulent Inducement. .......... 21

C. Jane Fails to State a Claim for Intentional Infliction of Emotional Distress. .................................................................................... 26

D. Jane Fails to State a Claim for Breach of Contract .................................. 29

CONCLUSION ........................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*,
988 F.2d 1157 (Fed. Cir. 1993)....................16

*Alanis v. Valdespino*,
2012 Tex. App. LEXIS 4065 (Tex. App. May 23, 2012)....................25

*Anderson v. Durant*,
550 S.W.3d 605 (Tex. 2018)....................26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................16

*B.R. v. F.C.S.B.*,
718 F. Supp. 3d 504 (E.D. Va. 2024)....................27

*Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*,
235 F. Supp. 2d 485 (E.D. Va. 2002)....................29

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................16, 28

*BHR Recovery Cmtys., Inc. v. Top Seek LLC*,
355 F. Supp. 3d 416 (E.D. Va. 2018)....................18

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017)....................4

*Brown-Mendoza v. King*,
No. 3:25-CV-0132-B, 2025 U.S. Dist. LEXIS 103923 (N.D. Tex. June 2, 2025)....................23

*Burger King*, 471 U.S. at 475....................7, 10

*Byerson v. Equifax Info. Servs., LLC*,
467 F. Supp. 2d 627 (E.D. Va. 2006)....................13

*Cassell v. Loyola Univ.*,
294 F. Supp. 622 (E.D. Tenn. 1968)....................11

*Clark v. Clark*,
11 Va. App. 286 (1990)....................22

*Combs v. Bakker*,
886 F.2d 673 (4th Cir. 1989) ....................................................................................4

*Consulting Eng'rs Corp. v. Geometric, Ltd.*,
561 F.3d 273 (4th Cir. 2009) ..........................................................................5, 8, 10

*Crabtree v. Aon Ins. Managers Bermuda Ltd.*,
No. 23-1959, 2025 U.S. App. LEXIS 7230 (4th Cir. Mar. 28, 2025) .................................4, 5

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
596 U.S. 212 (2002).......................................................................................................27

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).........................................................................................................5

*Davis v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999).......................................................................................................27

*Devine v. Pulte Home Corp.*,
No. 1:15cv1361, 2015 U.S. Dist. LEXIS 163197 (E.D. Va. Dec. 4, 2015)................22, 23, 24

*Doe v. Marymount Univ.*,
297 F. Supp. 3d 573 (E.D. Va. 2018) ..........................................................................21

*Doe v. TCU*,
United States District Court for the Eastern District of Virginia, case number
1:25-v-01513, ECF 1-3 .....................................................................................................2

*Doe v. Va. Wesleyan Coll.*,
90 Va. Cir. 345 (Cir. Ct. 2015) ......................................................................................21

*Dreher v. Budget Rent-A-Car Sys., Inc.*,
272 Va. 390 (2006) ..................................................................................................17, 21

*Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. Pshp.*,
213 F.3d 175 (4th Cir. 2000) ........................................................................................16

*Edwards v. Mich. State Univ.*,
No. 20-2086, 2020 U.S. Dist. LEXIS 201639 (D.N.J. Oct. 29, 2020) .....................................9

*Enomoto v. Space Adventures, Ltd.*,
624 F. Supp. 2d 443 (E.D. Va. 2009) ..........................................................................18

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
51 S.W.3d 573 (Tex. 2001)...........................................................................................24

*Exxon Corp. v. Emerald Oil & Gas Co.*,
348 S.W.3d 194 (Tex. 2011)..........................................................................................24

*Filak v. George*,
267 Va. 612 (2004) ....................29

*In re First Merit Bank, N.A.*,
52 S.W.3d 749 (Tex. 2001)....................21

*Garcia v. ECPI Univ. LLC*,
Case No. 2:25-cv-245, 2026 U.S. Dist. LEXIS 7636 (E.D. Va. Jan. 8, 2026) ....................20

*Gehling v. St. George's Sch. of Med.*,
773 F.2d 539 (3d Cir. 1985)....................6, 11

*Gonzales v. Gonzales*,
704 S.W.3d 54 (Tex. App. – Austin [3rd Dist.] 2024) ....................28

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)....................4

*Grayson v. Anderson*,
816 F.3d 262 (4th Cir. 2016) ....................4

*Gte Southwest v. Bruce*,
998 S.W.2d 605 (Tex. 1999)....................26

*Hardnett v. Duquesne University*,
897 F. Supp. 920 (D. Md. 1995)....................11

*Hatfill v. N.Y. Times Co.*,
459 F. Supp. 2d 462 (E.D. Va. 2006) ....................22

*Heinz Kettler GmbH & Co. Razor USA, LLC*,
750 F. Supp. 2d 660 (E.D. Va. 2010) ....................13

*Hoffmann-Law Roche, Inc. v. Zeltwanger*,
144 S.W.3d 438 (Tex. 2004)....................26, 27, 29

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)....................5, 11

*Intranexus, Inc. v. Siemens Med. Sols. Health Servs. Corp.*,
227 F.Supp.2d 581 (E.D. Va. 2002) ....................14

*Irving v. PAE Gov't Servs.*,
249 F. Supp 3d 826 (E.D. Va. 2017) ....................29

*Jennings v. Univ. of N.C.*,
482 F.3d 686 (4th Cir. 2007) ....................27

*Lane v. Halliburton*,
529 F.3d 548 (5th Cir. 2008) ....................21

*Lewin v. Columbia Univ. in N.Y.*,
No. 86-1191, 1987 U.S. App. LEXIS 19463 (4th Cir. June 19, 1987)....................5, 6

*Lycos, Inc. v. TiVo, Inc.*,
499 F. Supp. 2d 685 (E.D. Va. 2007) ....................15

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
674 F.3d 369 (4th Cir. 2012) ....................23

*Mayhew v. Dealey*,
143 S.W.3d 356 (Tex. App. – Dallas [5th Dist.] 2004) ....................28

*McCurry v. Aetna Cas. & Sur. Co.*,
742 S.W.2d 863 (Tex. App. 1987)....................25

*Mortarino v. Consultant Eng'g. Servs. Inc.*,
251 Va. 289 (1996) ....................22

*Mundheim v. Lepp*,
No. 05-19-01490-CV, 2021 Tex. App. LEXIS 3786 (Tex. App. May 13, 2021)....................25

*Mylan Labs, Inc. v. Matkari*,
7 F.3d 1130 (4th Cir. 1993) ....................16

*Nahigian v. Juno Loudoun, LLC*,
684 F. Supp. 2d 731 (E.D. Va. 2010) ....................18

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023)....................17

*NeuroCytonix, Inc. v. Six Kind LLC*,
Civil Action No. 1:24-cv-265, 2024 U.S. Dist. LEXIS 211575 (E.D. Va. Nov. 20, 2024) ....................23

*New Venture Holdings, L.L.C. v. DeVito Verdi, Inc.*,
376 F. Supp. 3d 683 (E.D. Va. 2019) ....................10

*Nichols v. G.D. Searle & Co.*,
783 F. Supp. 233 (D. Md. 1992)....................6

*Orr v. Keystone RV Co.*,
736 F. Supp. 3d 389 (E.D. Va. 2024) ....................18

*Owens v. DRS Auto. Fantomworks, Inc.*,
764 S.E.2d 256 (Va. 2014)....................18

*Parker v. Henry & William Evans Home for Children, Inc.*,
762 Fed. Appx. 147 (4th Cir. 2019)....................2

*Perna v. Sacred Heart Univ., Inc.*,
No. 22-cv-022843 (NSR), 2023 U.S. Dist. LEXIS 34546 (S.D.N.Y. Mar. 1, 2023)....................6

*Pragmatus AV, LLC v. Facebook, Inc.*,
769 F. Supp. 2d 991 (E.D. Va. 2011)....................14

*Quillen v. Int'l Playtex*
Inc., 789 F.2d 1041, 1044 (4th Cir. 1986)....................17, 21

*Russell Cty. Dep't. of Soc. Servs v. O'Quinn*, 259 Va. 139, 142 (2000)....................30

*Samsung Elecs. Co. v. Rambus, Inc.*,
386 F. Supp. 2d 708 (E.D. Va. 2005)....................13, 15

*Schlueter v. Carey*,
112 S.W.3d 164 (Tex. App. 2003)....................25

*Shields v. Delta Lake Irrigation Dist.*,
No. 13-01-622-CV, 2006 Tex. App. LEXIS 4082 (Tex. App. May 11, 2006)....................29

*Smith Int'l, Inc. v. Egle Grp. LLC*,
490 F.3d 380 (5th Cir. 2007)....................29

*Spaulding v. Wells Fargo Bank, N.A.*,
714 F.3d 769 (4th Cir. 2013)....................18, 23

*Standard Fruit and Vegetable Co. v. Johnson*,
985 S.W.2d 62 (Tex. 1998)....................26

*Teleqo Tech. Sols., Inc. v. Archtop Fiber LLC*,
No. 1:24-cv-01515, 2024 U.S. Dist. LEXIS 207340 (E.D. Va. Nov. 13, 2024)....................9, 11

*Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*,
791 F.3d 436 (4th Cir. 2015)....................13

*Umbrella Inv. Grp. v. Wolters Kluwer Fin. Servs.*,
972 F.3d 710 (5th Cir. 2020)....................23

*UMG Recordings, Inc. v. Kurbanov*,
963 F.3d 344 (4th Cir. 2020)....................5

*Verizon Online Servs., Inc. v. Ralsky*,
203 F. Supp. 2d 601 (E.D. Va. June 7, 2022)....................4

*Virginia Power Energy Mktg., Inc., v. EQT Energy, LLC*,
3:11CV630, 2012 U.S. Dist. LEXIS 98553 (E.D. Va. July 16, 2012) ....................................29

*Walden v. Fiore*,
571 U.S. 277 (2014) ..........................................................................................................6, 9

*Ward's Equip. v. New Holland N. Am.*,
254 Va. 379 (1997) ..............................................................................................................17

*Weidman v. Exxon Mobil Corp.*,
776 F.3d 214 (4th Cir. 2015) ........................................................................................18, 19

*What Hurts, LLC v. Volvo Penta of the Americas, LLC*,
710 F. Supp. 3d 502 (E.D. Va. 2024) .................................................................................17

*United States ex rel. Wilson v. Kellogg Brown & Root*,
525 F.3d 370 (4th Cir. 2008) ..............................................................................................18

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)............................................................................................................10

*Wynn's Extended Care, Inc. v. Bradley*,
619 F. Appx 216 (4th Cir. 2015)..........................................................................................18

*Yuzefovsky v. St. John's Wood Apartments*,
261 Va. 97 (2001) ...............................................................................................................22

*Zurawski v. Off. Of the AG-Commonwealth of Va.*,
No. 1:20-cv-00708, 2020 U.S. Dist. LEXIS 272729 (E.D. Va. Oct. 20, 2020)................14, 15

**Statutes**

28 U.S.C. § 1367(a) ..............................................................................................................17

28 U.S.C. § 1391(b)(1) ..........................................................................................................12

28 U.S.C. § 1391(b)(2) ..........................................................................................................12

28 U.S.C. § 1404(a) ...........................................................................................................3, 13

28 U.S.C. § 1406(a) .......................................................................................................3, 12, 13

Texas Senate Bill 212 .................................................................................................3, 10, 14, 23

Va. Code Ann. § 59.1-200(A)..................................................................................................18

Va. Code § 59.1(200)(A)(5-6) .................................................................................................20

Virginia Consumer Protection Act.............................................................1, 7, 16, 17, 18, 20, 21

**Other Authorities**

Fourteenth Amendment ....................................................................................................4

Restat. 2d of Torts, § 531 ....................................................................................................24

**Rules**

Rule 8 ....................................................................................................23

Rule 9 ....................................................................................................22

Rule 9(b) ....................................................................................................18, 21, 23

Rule 12(b)(2) ....................................................................................................3, 4

Rule 12(b)(3) ....................................................................................................3

Rule 12(b)(6) ....................................................................................................3, 4, 16

Rule 45(c) ....................................................................................................15

Defendant Texas Christian University ("TCU"), in support of its Motion to Dismiss, or in the Alternative, to Transfer Venue, states as follows:

## INTRODUCTION

Plaintiff Jane Doe reported to TCU that she was the victim of a sexual assault in her dorm room at TCU on October 6, 2024. TCU's investigation into Jane's subsequent Title IX complaint took less than five months from the date of her initial report to a decision in her favor. Despite the prompt investigation and favorable outcome, Plaintiff Jane Doe filed this claim against TCU for alleged violations of the Virginia Consumer Protection Act, fraud and fraudulent inducement, intentional infliction of emotional distress, and breach of contract.

Although Plaintiff's claims arise from TCU's Title IX investigation, Plaintiff's Complaint does not allege a violation of Title IX because Title IX does not afford her the ability to recover non-economic losses. Instead, Plaintiff attempts to recast generalized admissions and policy statements as fraudulent consumer representations that TCU allegedly made in Virginia. But those statements did not guarantee third-party conduct or promise a particular disciplinary outcome. Nor do they convert a Texas campus disciplinary dispute into a Virginia case. At most, Plaintiff alleges routine national admissions communications and post-dispute settlement contacts. Those allegations do not support general jurisdiction, establish claim-related specific jurisdiction over the Texas-centered claims, or overcome the overwhelming convenience and interest-of-justice reasons to transfer this case to the Northern District of Texas.

This Court must first determine whether personal jurisdiction exists in the United States District Court for the Eastern District of Virginia. Alternatively, if this Court determines that personal jurisdiction exists, TCU respectfully submits that the Court should dismiss or transfer this matter for improper venue. If this Court determines that jurisdiction and venue are proper, TCU

respectfully submits that Plaintiff's Complaint fails to state a cause of action.

## FACTUAL BACKGROUND

Jane alleges that a fellow student at TCU raped Jane in her TCU dorm room in October 2024. ECF 1 ¶ 26. Jane went home to Virginia during TCU's fall break, where she went to a physician and visited a therapist. ECF 1 ¶ 29-30. On October 15, 2024, Jane filed a formal complaint with TCU's Office of Institutional Equity ("OIE"). ECF 1 ¶ 31. Jane's Complaint provides a vague timeline of events, and she alleges that TCU delayed beginning its investigation until "November 22, 2024, a full five weeks after Jane had filed her Complaint." ECF 1 ¶ 35. Jane previously filed a substantially similar complaint in this Court, however, and she attached to her pleading a Title IX Panel Hearing Deliberative Report that detailed the exact timeline of TCU's investigation. *See Doe v. TCU*, United States District Court for the Eastern District of Virginia, case number 1:25-v-01513, ECF 1-3. The Deliberative Report is attached as "**Exhibit A.**" [1]

The Deliberative Report details each step in TCU's investigation over the following weeks leading to an investigative report, a full-day hearing, and a finding in her favor on February 25, 2025. *Id.* at 3-5. Jane appealed the Respondent's sanction, and her appeal was denied. ECF 1 ¶ 42-44. Then, on July 10, 2025, Kathy Cavins-Tull, TCU's Vice Chancellor for Student Affairs, wrote Jane to explain that the Chancellor had decided to have her review the case. The July 10, 2025 Letter is attached as "**Exhibit B**."[2] Ms. Cavins-Tull reviewed the case and found that the original

---

[1] The court may consider documents outside of the complaint without converting a motion to dismiss into summary judgment when plaintiff has actual notice of the documents and relied on them in framing the complaint. *Parker v. Henry & William Evans Home for Children, Inc.*, 762 Fed. Appx. 147, 153 (4th Cir. 2019) (holding that the court did not err in considering an affidavit attached to a motion to dismiss even when the facts were new because plaintiff was on notice of the new facts and relied on them in forming the complaint). Here, Plaintiff specifically made the Deliberative Report a part of the Court's record when she attached it to her prior Complaint.

[2] *Id.; see also* ECF 1 ¶ 49.

sanction imposed was "not proportionate or appropriate …" and that she "increase[d] the sanctions imposed by the hearing panel and suspend the Respondent…for the length of Complainant's tenure as a student at TCU or for two academic semesters, whichever is longer." Ex. B.

The Deliberative Report demonstrates that TCU acted immediately in response to Jane's report. Nevertheless, Jane alleges that "TCU knew the school environment was neither safe nor supportive for women." Plaintiff's Complaint argues that TCU treats men differently than women because "male rapists and their families are more likely to raise a stink." ECF ¶ 19(l). Her pleading bases this inference on TCU's reports pursuant to Texas Senate Bill 212. ECF 1 ¶¶ 60-65. TCU's Fall 2024 Report is attached as "**Exhibit C**."[3] ECF 1 ¶ 61. Jane compares the number of official reports of sexual assault between the fall semesters of 2020 through 2024 to the number of formal investigations. ECF 1 ¶¶ 60-61. Her comparison is inherently flawed because the data "may or may not be duplicated in the overall reporting numbers." Ex. C at 1. Each such report provides a list of reasons why any reports of sexual harassment did not initiate a disciplinary process. *Id.* at 3. The reports do not include any data based on gender identity. *See generally* Ex. C. Yet, Plaintiff's Complaint fails to acknowledge any of these distinctions.

## ARGUMENT

Before this Court may address the sufficiency of Jane's allegations to state a cause of action under Rule 12(b)(6), the Court must first determine whether it has jurisdiction over TCU and whether the Eastern District of Virginia is proper venue. TCU requests that this Court dismiss Jane's Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), (3) and for improper venue under 28 U.S.C. § 1406(a). Alternatively, pursuant to 28 U.S.C. § 1404(a), this Court should transfer this matter to the Northern District of Texas. Should this Court determine that it has personal

[3] *Id.; see also* ECF 1 ¶ 60-61.

jurisdiction over TCU and that venue is proper, Plaintiff's Complaint fails to state a claim, and this Court should dismiss the Complaint pursuant to Rule 12(b)(6).

## I. Virginia Lacks Personal Jurisdiction Over TCU

Under Rule 12(b)(2), and prior to an evidentiary hearing, the plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).[4] The Court must engage in a two-step inquiry to determine whether personal jurisdiction exists over a nonresident defendant. First, the Court must look to the state's long-arm statute "to assess whether the plaintiff's cause of action against the defendant and the nature of the defendant's contacts with Virginia fall within the law's scope," *Verizon Online Servs., Inc., v. Ralsky*, 203 F. Supp. 2d 601, 609 (E.D. Va. June 7, 2002). Second, the Court must determine whether the state's long-arm statute comports with the Due Process Clause of the Fourteenth Amendment. *Id*. Since Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry. *Crabtree v. Aon Ins. Managers Bermuda Ltd*., No. 23-1959, 2025 U.S. App. LEXIS 7230, at *3 (4th Cir. Mar. 28, 2025).

Due process permits two forms of personal jurisdiction: (1) general jurisdiction, where a nonresident defendant's contacts are so continuous and systemic as to render them essentially at home in the forum State, *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); and (2) specific jurisdiction, where the plaintiff's claims arise out of the defendant's purposeful contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 272 (2017). Due process is satisfied only if the defendant has certain "minimum contacts" with the forum state, such that "the maintenance of the suit does not offend traditional notions of fair play

[4] Ultimately, a plaintiff must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence either before or at trial. *Grayson*, 816 F.3d at 268 (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

and substantial justice." *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Fourth Circuit applies a three-prong test for specific jurisdiction: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Crabtree*, 2025 U.S. App. LEXIS 7230, at *4 (quoting *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020)). Jane has not met her burden of making a prima facie case that either general or specific jurisdiction exists. TCU is not "at home" in Virginia, and Jane's claims do not arise from any purposeful contacts with the Commonwealth.

**A. General Jurisdiction Does Not Exist because TCU is Not "At-Home" in Virginia.**

For corporations and institutions, the "paradigm" bases of general jurisdiction are the place of incorporation and the principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). TCU is incorporated and headquartered in Texas. It has no offices, property, or operations in Virginia. *See* William J. Nunez Affidavit, incorporated herein as "**Exhibit D**." Nothing in Jane's Complaint plausibly alleges facts approaching the "exceptional case" required for a court to exercise general jurisdiction over a nonresident university. *See Daimler AG* at 138 n.19 (noting that only an "exceptional case" permits general jurisdiction outside the forum of incorporation or principal place of business).

Jane instead relies on TCU's student-recruitment activity in Virginia and admissions communications she received while living in Virginia. ECF 1 ¶¶ 4-6, 8-10, 17. Such allegations fall far short of the "continuous and systematic" contacts necessary to render TCU "at home" in the forum. Courts have uniformly rejected general jurisdiction over out-of-state universities based on routine recruiting or admissions contacts. *See, e.g.*, *Lewin v. Columbia Univ. in N.Y.*, No. 86-

1191, 1987 U.S. App. LEXIS 19463 at *12 (4th Cir. June 19, 1987) (finding that Maryland lacked jurisdiction over Columbia University despite applications, mailings, alumni magazines, and recruiting visits); *Gehling v. St. George's Sch. of Med.*, 773 F.2d 539, 541–42 (3d Cir. 1985) (finding that a medical school is not subject to jurisdiction in Pennsylvania despite advertising in, enrolling students from, and establishing a program affiliation in Pennsylvania); *Perna v. Sacred Heart Univ., Inc.*, No. 22-cv-022843 (NSR), 2023 U.S. Dist. LEXIS 34546, at *1, 8-9 (S.D.N.Y. Mar. 1, 2023) (finding that New York admissions interviews and recruiting "minimal and sporadic," not "continuous and systematic"). Courts in this Circuit also hold that acts of solicitation, without more, are insufficient to support personal jurisdiction. *Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 240 (D. Md. 1992).

These decisions reflect a consistent principle: national universities recruit across state lines, and such conduct does not establish the quality of contacts necessary to find general jurisdiction. As the Fourth Circuit has cautioned, this approach "would subject [universities] to suit on non-forum-related claims in every state where a member of the student body resides." *Lewin*, 1987 U.S. App. LEXIS 19463 at *11 (citation omitted). TCU's limited contacts with Virginia—occasional recruiting trips, mailings, and admissions communications—are the kind of "minimal and sporadic" contacts that are common to all national universities and do not amount to "continuous and systematic" activities to render it at home in Virginia.

**B. Specific Jurisdiction Does Not Exist Because Jane's Claims Do Not Arise Out of TCU's Virginia Contacts.**

The Court's minimum contact analysis focuses on the relationship between the "defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). A plaintiff's own contacts with forum cannot be "decisive in determining whether the defendant's due process rights are violated." *Id*. at 285. This test ensures that the defendant is not "haled into a jurisdiction solely as

a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475. Even accepting plaintiff's allegations that TCU engaged in routine recruitment activity directed to Virginia and sent admissions-related materials to plaintiff there, those contacts do not support specific jurisdiction. Plaintiff's IIED claim arises from events that occurred entirely in Texas, including the alleged assault and TCU's subsequent reporting, investigative, hearing, and disciplinary processes. Plaintiff's fraud and VCPA theories are pleaded around website statements, but those alleged statements are generalized recruitment and policy statements concerning an educational relationship to be performed in Texas. The gravamen of the case remains a Texas campus incident and TCU's Texas-based response to it. TCU's limited contacts with Virginia bear no relationship to the alleged conduct and do not give rise to the exercise of specific jurisdiction.

**i. TCU did not purposefully avail itself of the privilege of conducting activities in Virginia.**

In considering the first factor of the Fourth Circuit's test, whether a defendant has purposefully availed itself of the forum court's jurisdiction, the Fourth Circuit has previously analyzed the following non-exhaustive factors:

(1) whether the defendant maintained offices or agents in the forum state;

(2) whether the defendant maintained property in the forum state;

(3) whether the defendant reached into the forum state to solicit or initiate business;

(4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

(5) whether a choice of law clause selects the law of the forum state;

(6) whether the defendant made in-person contact with a resident of the forum state regarding the business relationship;

(7) whether the relevant contracts required performance of duties in the forum state; and

(8) the nature, quality, and extent of communications about the business being transacted.

*Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). (citations omitted).

Application of these factors shows that TCU did not purposefully avail itself of the privilege of conducting activities in Virginia. TCU has no offices, operations, or property in Virginia, and nothing about its relationship with Jane required any performance in Virginia. *See* Ex. D. Further, TCU's admissions communications with Jane began only ***after*** "Jane expressed interest in TCU." ECF 1 ¶ 10. TCU's actions of sending general marketing materials to Jane's high school is insufficient to establish general jurisdiction. ECF 1 ¶ 9. Jane initiated the relationship herself rather than TCU specifically targeting or recruiting her. Indeed, Jane does not claim that she attended any TCU recruiting events in Virginia, and TCU made no in-person outreach to her in the Commonwealth. The only direct communications between Jane and TCU were by mail and email after Jane expressed interest. ECF 1 ¶ 10.

TCU's routine national recruitment efforts do not transform it into a Virginia-based actor. Like countless universities, TCU sends standardized, mass-market admissions materials to prospective applicants, including those who—like Jane—have already expressed interest. *See* Ex. D. These communications were not Virginia-focused; they were automated admissions messages triggered by Jane's expression of interest. No agreement between the parties selects Virginia law, and no aspect of the admissions relationship contemplated ongoing contacts in the Commonwealth. These facts show only routine, national recruiting activity and not the kind of targeted, Virginia-focused conduct that could reasonably lead TCU to anticipate being haled into court here. *See Consulting Eng'rs Corp*. at 280.

**ii. Jane's claims do not arise out of the Defendant's activities.**

The second prong, whether Jane's claims arise out of or relate to TCU's activities in Virginia, is not close. None of TCU's limited contacts with the Commonwealth bear a causal or

even tangential relationship to the alleged wrongs. Jane's IIED claim, and the damages complained of in her fraud claim, arise entirely from events on TCU's Fort Worth campus during her freshman year—a reported sexual assault in her dorm room, TCU's response to that assault including an investigation, hearing, and disciplinary process. ECF 1 ¶¶ 26-28, 31, 36, 37, 39, 40, 44, 49. Those events unfolded months after the only Virginia-related interaction Jane identifies: her high-school-era admissions communications with TCU.

Jane also cannot rely on her own unilateral decision to return to Virginia as a jurisdictional hook. The Supreme Court has made clear that "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Jane's post-incident presence in Virginia reflects only her own unilateral activity, not TCU's contacts with the Commonwealth. ECF 1 ¶¶ 29-30. *See Edwards v. Mich. State Univ.*, No. 20-2086, 2020 U.S. Dist. LEXIS 201639, at *12 (D.N.J. Oct. 29, 2020) (holding that plaintiff's relocation after the alleged misconduct cannot serve as a valid basis for specific personal jurisdiction); *Teleqo Tech. Sols., Inc. v. Archtop Fiber LLC*, No. 1:24-cv-01515, 2024 U.S. Dist. LEXIS 207340, at *6 (E.D. Va. Nov. 13, 2024) (finding "incidental connection" to Virginia insufficient for personal jurisdiction). Further, TCU sent Jane marketing materials only after she expressed interest in TCU, which triggered standard mass-market admissions messages. Those communications were the consequence of Jane's unilateral decision to reach out to TCU. They were not the product of any Virginia-directed scheme to form a relationship tied to the claims now asserted.

**iii. The exercise of personal jurisdiction is not constitutionally reasonable.**

As to the third prong of the Fourth Circuit's test for specific jurisdiction, the exercise of personal jurisdiction is constitutionally reasonable if the defendant's activities or contacts with the forum are such that it would "reasonably anticipate being haled into court" in the forum state. *New*

*Venture Holdings, L.L.C. v. DeVito Verdi, Inc.*, 376 F. Supp. 3d 683, 691 (E.D. Va. 2019) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In this regard, this Circuit has considered the following non-exhaustive factors: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of the disputes; and (5) the interests of the states in furthering substantive social policies. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009) (citing *Burger King*, 471 U.S. at 475).

The exercise of personal jurisdiction over TCU in Virginia is unreasonable and inequitable. The burden on TCU would be extraordinary because it is a Texas-based university with no offices, property, or operations in Virginia. Virginia's interest in adjudicating these disputes is minimal. The alleged assault and TCU's response occurred exclusively in Texas, implicating Texas's sovereign interest in regulating its own universities, enforcing its own statutes, such as Senate Bill 212, and providing a forum for campus disputes. Texas not only has the stronger connection but the dominant regulatory, institutional, and practical interest in this litigation. By contrast, Virginia has no connection to the alleged conduct beyond Jane choosing to move back to Virginia after the incident. The claims in this case arise from alleged misconduct on a Texas campus, governed by Texas law, investigated by Texas officials, and documented in Texas records.[5]

Courts have long warned that exposing universities to suit in every state where they recruit would offend due process. *See Cassell v. Loyola Univ.*, 294 F. Supp. 622, 624 (E.D. Tenn. 1968)

---

[5] Jane's reference to "TCU's Board of Trustee's reports," SB 212 reports, further foreshadows her intent to seek extensive discovery into years of unrelated incidents and institutional data filed with the Texas Higher Education Coordinating Board and presented to TCU's Board of Trustees. That would require this Court to manage wide-ranging discovery into Texas law, Texas regulatory obligations, and dozens of Texas-based witnesses and administrators who have no ties to Virginia.

("Traditional notions of fair play and substantial justice" do not permit subjecting a university to suit "in every state of the union from which it may seek or attract outstanding" students); *Hardnett v. Duquesne University*, 897 F. Supp. 920, 925 (D. Md. 1995) (quoting *Cassell* and rejecting jurisdiction over Pennsylvania university despite Maryland admissions contacts); *Gehling*, 773 F.2d at 542 (rejecting jurisdiction because otherwise universities would be subject to suit "in every state where a member of the student body resides"). As *Hardnett* observed, a rule extending jurisdiction so broadly would deter schools from recruiting out-of-state students, a perverse result not required by due process. This Court has echoed the same principle. *See Teleqo Tech. Sols., Inc*. 2024 U.S. Dist. LEXIS 207340, at *7-8.

In short, none of TCU's activities are "so tied" to Virginia that it would be fair or foreseeable to litigate here. However significant Jane's unilateral contacts with Virginia may be, these contacts cannot be decisive in determining whether TCU's due process rights are violated. Requiring TCU to defend this lawsuit in Virginia would offend "traditional notions of fair play and substantial justice," *Int'l Shoe Co.*, 326 U.S. at 316, invite forum-shopping, and expose every nationally recruiting university to litigation in all 50 states. The Constitution does not permit that result, and this Court should not either.

**iv. The parties' alleged agreement to mediate this dispute in Virginia does not provide a basis for personal jurisdiction.**

TCU's willingness to engage in mediation in Virginia does not create a jurisdictional basis for this claim to proceed in Virginia. If courts were to subject non-resident defendants to personal jurisdiction based solely on an agreement to participate in a private and confidential settlement process, then no institutional defendant would ever engage in mediation before litigation. TCU's alleged breach of a contract to mediate has no logical relationship with the underlying claims, all of which occurred in Texas. TCU was willing to mediate in Virginia to accommodate Jane but

forwent mediation when it became clear that it would be unproductive. TCU is not obligated to mediate this case. TCU has every right to present its defenses through litigation. The suggestion that an agreement to mediate surrenders TCU's right to defend itself or provides a basis for personal jurisdiction is without merit.

## II. The Eastern District of Virginia is an Improper Venue.

Jane incorrectly states that venue is proper under 28 U.S.C. § 1391(b)(1) and (2). ECF 1 ¶ 3. Because TCU does not reside in Virginia and a substantial part of the events giving rise to the claim did not occur in Virginia, venue is not proper in this Court. Accordingly, this matter should be dismissed pursuant to 28 U.S.C. § 1406(a).

Pursuant to 28 U.S.C. § 1391(b)(1), a civil action may be brought in "a judicial district in which any defendant resides…" For venue purposes, "an entity with the capacity to sue and be sued in its common name under applicable law…shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question…" TCU is not subject to this Court's personal jurisdiction with respect to this civil action. This Court lacks both general and specific jurisdiction over TCU. *See supra Sec. I.* Therefore, because TCU cannot be "deemed to reside" in Virginia, a civil action cannot be brought in this judicial district under 28 U.S.C. § 1391(b)(1).

Venue is also not proper under 28 U.S.C. § 1391(b)(2), which allows for a civil action to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . " Here, the only proper venue is Texas, as the events giving rise to Jane's claims substantially occurred in Texas. Moreover, venue is not proper under Jane's breach of contract claim, which arises out of the parties' agreement to negotiate in the future to attempt to resolve claims arising from conduct occurring in Texas. Therefore, Virginia is not a proper judicial

district for Jane's claims and the Court should dismiss the Complaint. *See* 28 U.S.C. § 1406(a).

**III. Alternatively, Transfer to the Northern District of Texas is Appropriate.**

If this Court finds that Virginia is a proper venue, transfer to the Northern District of Texas is warranted. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The Fourth Circuit employs a four-factor test when considering a motion to transfer venue: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

**A. Transfer Furthers the Interests of Justice under Section 1404(a).**

"The interest of justice factor 'encompasses public interest factors aimed at systemic integrity and fairness.'" *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (internal quotation omitted). "[T]he interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction." *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 716 (E.D. Va. 2005) (quoting 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3847 at 370).

> The most prominent elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments. *Id.* Fairness is assessed by considering factors such as docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law.

*Heinz Kettler GmbH & Co. Razor USA, LLC*, 750 F. Supp. 2d 660, 669-70 (E.D. Va. 2010).

Each count in Jane's complaint is inextricably grounded in the same set of facts stemming from TCU's investigation in Texas. The interest of justice strongly favors transfer. First, only the

Northern District of Texas can ensure the *in-person* availability of critical witnesses through compulsory process. The witnesses with firsthand knowledge of the alleged assault, TCU's Title IX investigation, hearing process, and subsequent appeal—including student witnesses, investigators, hearing officials, and student-affairs personnel—are all located in Texas. Additionally, the Northern District of Texas is better positioned to evaluate the actions of Texas-based officials, interpret the application of Texas law, and oversee discovery that will involve confidential educational records, trauma-informed investigative protocols, and student privacy considerations governed by FERPA and Texas law. The local interest is particularly pronounced when the allegations challenge not only TCU's Title IX response but also its compliance with Texas statutes, such as Senate Bill 212. All evidence, student-support services, counseling records, and institutional documents are maintained in Texas. Trying this case in Virginia would burden a forum with no connection to the events, and the interest of justice strongly favors transfer.

**B. Jane's Selection of Virginia as the Venue Should be Given Little Weight.**

The weight given to the plaintiff's choice of venue varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action. *See Zurawski v. Off. Of the AG-Commonwealth of Va.*, No. 1:20-cv-00708, 2020 U.S. Dist. LEXIS 272729, at *10-11 (E.D. Va. Oct. 20, 2020) (*citing Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)). Courts do not give a plaintiff's chosen venue substantial weight when the operative facts have little or no connection to the plaintiff's chosen forum. *Intranexus, Inc. v. Siemens Med. Sols. Health Servs. Corp.*, 227 F.Supp.2d 581, 583 (E.D. Va. 2002) (citation omitted). In *Zurawski*, this Court did not defer to the plaintiff's choice of forum, even though it was plaintiff's home, when the underlying wrong took place in a different forum. *See Zurawski*, 2020 U.S. Dist. LEXIS 272729, at *11. In finding that the plaintiff's home forum did not control

their transfer analysis, the Court relied on the fact that "the nexus between plaintiff's claim and the [plaintiff's home forum] is objectively weak." *Id.*

Despite Jane's selection of her home forum of Virginia, the Eastern District of Virginia has no connection to the underlying facts of Jane's claims. The incident on October 6, 2024, took place on TCU's campus in Fort Worth, Texas, as did TCU's investigation into the incident. As discussed below, Jane has not shown the existence of an enforceable contract in Virginia to meditate. Thus, her claims arose and her alleged injury occurred in Fort Worth, Texas. Jane's claims bear a more substantial connection to the Northern District of Texas as opposed to the Eastern District of Virginia. Accordingly, this Court should not afford Jane's choice of venue substantial weight.

### C. Transfer of this Lawsuit Benefits Witness Convenience, Access, and the Convenience of the Parties

In assessing witness convenience, access, and the overall convenience of the parties, courts consider the "ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process." *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007); *Samsung*, 386 F. Supp. 2d at 717 n.13. Texas is clearly the appropriate forum. TCU is located and headquartered in Fort Worth, Texas, within the Northern District of Texas and Jane could have filed this case there originally. All documents and discovery materials are maintained on TCU's campus, and all of TCU's witnesses currently reside in Texas as students or employees of the University. Due to the sensitive nature of this matter, depositions will need to take place *in-person*. Under Rule 45(c), depositions of Texas residents will need to take place in Texas. Should this matter remain in Virginia, the parties cannot subpoena Texas-based witnesses to appear *in-person* at trial, and requiring witnesses to travel to Virginia would unnecessarily pull TCU personnel away from their educational duties in Fort Worth for significantly longer than is necessary for Jane's case to be heard on the merits in a court with jurisdiction over the parties and

the claims. For the same reason, travel costs to Texas to conduct discovery and bringing witnesses to Virginia for trial will be higher than in Texas. Texas is the forum that is most appropriate for this lawsuit based on a consideration of all relevant factors.

## IV. Jane Fails to State a Claim for Which She is Entitled to Relief.

Should the Court determine that it has personal jurisdiction over TCU and that this Court is a proper forum, TCU respectfully requests that this Court dismiss Jane's Complaint pursuant to Rule 12(b)(6) for failing to state a claim. Rule 12(b)(6) allows courts to terminate lawsuits "that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). On a motion to dismiss for failure to state a claim, the court accepts the plaintiff's well-pleaded allegations. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A plaintiff must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint fails when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 664. The court may not accept legal conclusions in the form of factual allegations. *Twombly*, 550 U.S. at 555. Additionally, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000). For the reasons stated below, Jane's Complaint fails to state a viable cause of action.

### A. Jane Fails to State a Claim for a violation of the Virginia Consumer Protection Act.

#### i. The VCPA does not apply.

Because Virginia lacks personal jurisdiction over TCU, Jane is not entitled to relief

pursuant to the Virginia Consumer Protection Act ("VCPA"). As discussed previously, universities' broad marketing campaigns do not establish sufficient contacts with the forum state such that they should expect to be haled into court. Here, the alleged consumer transaction took place in Texas. Jane moved to Texas to pay for and receive a service from TCU: an education. TCU does not provide services or goods in Virginia. Where Jane learned about TCU's services is insufficient to establish that this is a consumer transaction under the VCPA. Further, Virginia cannot use its consumer statute to police conduct TCU's Texas campus in compliance with Title IX simply because plaintiff attempts to anchor the case in Virginia through recruiting allegations. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 368-370 (2023) (noting that the dormant commerce clause prohibits the enforcement of state laws driven by economic protectionism at the burden of out-of-state competitors).

Plaintiff alleges that this Court enjoys supplemental jurisdiction over Jane's state law claims under 28 U.S.C. § 1367(a). ECF 1 at ¶ 2. A federal court exercising supplemental jurisdiction over state law claims must apply the choice of law rules of the forum state. *What Hurts, LLC v. Volvo Penta of the Americas, LLC,* 710 F. Supp. 3d 502, 514 (E.D. Va. 2024). Plaintiff's VCPA claim alleges fraud. ECF 1 at ¶ 71, 72. "Fraud is a tort." *Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 385 (1997). Virginia's choice of law rule in tort actions is lex loci delicti, "meaning the law of the place of the wrong governs all matters related to the basis of the right of action." *Dreher v. Budget Rent-A-Car Sys., Inc*., 272 Va. 390, 395 (2006) (citations omitted). The "place of the wrong" is defined as "the place where the last event necessary to make an act liable for an alleged tort takes place." *Quillen v. Int'l Playtex* Inc., 789 F.2d 1041, 1044 (4th Cir. 1986). Here, Jane alleges that TCU failed to provide a "safe and supportive environment" for women that was "free from discrimination" while she was student on campus in Texas, and as such, she

suffered harm. Therefore, the place of the wrong is Texas, and Texas law applies. Jane's VCPA claim fails as a matter of law.

**ii. Jane's VCPA claim does not meet the heightened pleading standard pursuant to Rule 9(b).**

Even if the VCPA applied, Jane fails to state a viable claim. To state a claim under the VCPA, Plaintiff must allege specific facts showing that TCU committed a fraudulent act or practice in connection with a "consumer transaction." Va. Code Ann. § 59.1-200(A); *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010); *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 456 (E.D. Va. 2009). "Because they involve allegations of fraud, VCPA claims are subject to Rule 9(b)'s heightened pleading standard." *Orr v. Keystone RV Co.*, 736 F. Supp. 3d 389, 397 (E.D. Va. 2024). Under this heightened standard, Plaintiff is "'required to state with particularity the circumstances constituting fraud or mistake', including 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Wynn's Extended Care, Inc. v. Bradley*, 619 F. Appx 216, 220 (4th Cir. 2015) (quoting *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015)). Plaintiff must also show both "reliance and damages." *BHR Recovery Cmtys., Inc. v. Top Seek LLC*, 355 F. Supp. 3d 416, 424 (E.D. Va. 2018) (citing *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014)).

Jane's VCPA claim has not cleared Rule 9(b)'s heightened pleading standard. At a minimum, Jane must plead "the who, what, when, where, and how of the alleged fraud" before the case can proceed. *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotations omitted). "Vague generalization[s]" will not suffice. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013). Jane alleges that "the university sent her promotional materials" and directed her to "its website for more information." ECF 1 ¶ 10. She

does not specify when or how many times the representations occurred. *See Weidman*, 776 F.3d at 219. Regarding the promotional materials, Jane does not produce, cite, or quote any specific brochure, email, or other material. Rather, she alleges generally that the materials "intentionally and materially misrepresented aspects of the university . . . the safety of the school's environment for women and the school's commitment to protecting women from sex discrimination." ECF 1 ¶ 12. By not specifying with particularity which promotional materials, and the contents of those materials, Jane fails to meet the heightened pleading standard for fraudulent acts.

The only specific quotes Jane provides of TCU's alleged "misrepresentations" are purportedly from its website. None of the quotes in the Complaint are attributed to a particular URL; nor do they even form a complete sentence. *Id.* at ¶¶ 14, 19, 69. Instead, Jane selectively quotes portions of sentences, such as "safe and supportive environment" and "environment free from discrimination." *Id.* at ¶ 19. The context of such phrases is especially important when attempting to plead fraudulent misrepresentation because Jane incorrectly and improperly frames the statements as explicit guarantees that independent third parties will not commit tortious, discriminatory, or harassing conduct on campus. For example, Jane quotes, without citing, portions of allegedly the website for TCU's Office of Institutional Equity ("OIE"), which states OIE works to support the university's goal of providing a safe and supportive environment "by ensuring all individuals have the opportunity to meaningfully engage in a learning and working environment that is free from all forms of harassment and discrimination." *Id.* at ¶ 14. The actual statement on TCU OIE's webpage, however, demonstrates that TCU does not guarantee that no student will experience tortious, discriminatory, or harassing conduct. *See* Texas Christian University, *About OIE*, https://www.tcu.edu/institutional-equity/about-us.php (last visited April 24, 2026).

Rather, "[t]he OIE *responds* to reports of alleged discrimination and harassment…"

(emphasis added). It encourages readers to review TCU's policy prohibiting harassment and sexual misconduct, providing resources to file Title IX complaints, and noting that anyone who violates the policy may be subject to disciplinary action. *Id.* ("I encourage you to review the two new policies (TCU Policy 1.008 and TCU Policy 1.009) which explains these matters in more detail."). Having an office in place to *respond* to reports of harassment necessarily negates Jane's claim that TCU guarantees students' absolute freedom from tortious or other illegal conduct. Within the framework of the VCPA, TCU OIE's webpage does not make representations about "the characteristics" or "quality" of the environment on campus for the purpose of establishing a claim. ECF 1 ¶ 66-72. Rather, the statements describe OIE's role in responding to claims of harassment. The website's use of phrases like "safe and supportive environment" and "free from discrimination" reflects TCU's aspirations for its community, which OIE actively fosters by responding to Title IX reports. As such, Jane fails to state a violation of Va. Code § 59.1(200)(A)(5-6).

The unreported decision in *Garcia v. ECPI Univ. LLC*, Case No. 2:25-cv-245, 2026 U.S. Dist. LEXIS 7636 (E.D. Va. Jan. 8, 2026), does not compel a different outcome. In *Garcia*, the plaintiff was sexually harassed by a professor continuously over the course of a semester. *Id.* at *2-4. When the plaintiff attempted to report the professor, university officials confirmed that they were aware of the professor's behavior but did nothing to address it *at all*, and instead brushed it off by telling the plaintiff "You know he's not malicious, right?" *Id.* at *3. The court found that these facts sufficiently pleaded a claim of misrepresentation of the quality of the school's educational serves to prospective students, as advertised on its website. *Id.* at *19-20. In contrast, following Jane's Title IX complaint, TCU followed through on what it promotes publicly. It responded to her complaint by conducting a full investigation, finding in her favor, and ultimately

suspending the third-party offender.

As such, Jane's partial quotes from TCU's website about its goal of a discrimination-free environment are not enforceable guarantees within the meaning of the VCPA. Nor do they create an inflated legal standard for universities, which do not act as *in loco parentis* guarantors of student safety. *See Doe v. Va. Wesleyan Coll.*, 90 Va. Cir. 345, 359 (Cir. Ct. 2015); *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 589 (E.D. Va. 2018). For these reasons, Jane's efforts to bypass the limitations of a negligence claim against her university under the rubric of a consumer production statute fail to state a viable claim, and her VCPA cause of action should be dismissed.

**B. Jane Fails to State a Claim for Fraud and Fraudulent Inducement.**

Jane alleges that TCU committed fraud by failing to provide a "safe and supportive environment" for women that was "free from discrimination" while she was student on campus in Texas, and she claims that this fraud continued through TCU's handling of Jane's complaint. ECF 1 ¶ 75-76. To assert a claim for actual fraud under Texas law, a plaintiff must show: (1) the defendant made a material representation, (2) the representation was false, (3) when the representation was made, the defendant knew it was false or made it recklessly as a positive assertion without any knowledge of its truth, (4) the defendant intended to induce the plaintiff to act upon the representation, and (5) the plaintiff actually and justifiably relied upon the representation, and (6) the plaintiff suffered injury as a result. *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (quoting *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)).[6]

Preliminarily, Jane fails to satisfy the heightened pleading requirements of Rule 9(b) for

[6] Under Virginia's choice of law rules, Texas law governs Jane's fraud and fraudulent inducement claims. *See Dreher v. Budget Rent-A-Car Sys., Inc.*, 272 Va. at 395; *Quillen v. Int'l Playtex Inc.*, 789 F.2d at 1044.

claims of fraud.[7] Jane does not sufficiently identify the materiality of any alleged fraudulent statements because she relies on non-factual expressions that cannot be proven false. Throughout her Complaint, Jane echoes portions of TCU's promotional materials and "representations" made on its website regarding its "safe and supportive environment" for women and a campus "free from discrimination," and in "compliance with the law…" ECF 1 ¶ 75, 12, 13, 14. Jane fails to produce, cite, or quote any specific documents or sources from which these alleged representations originate or the time and place of each statement. Despite this, Jane uses these out-of-context alleged representations as the basis for her decision to attend the University.

Mere expressions of an opinion, "however strong and positive the language may be, is no fraud." *Devine v. Pulte Home Corp.*, No. 1:15cv1361, 2015 U.S. Dist. LEXIS 163197, at *12 (E.D. Va. Dec. 4, 2015) (citing to *Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 110-11 (2001)). Each case must be adjudged upon its own facts when determining whether a representation is a matter of opinion or statement of fact, "taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances." *Devine v. Plute Home* Corp, 2015 U.S. Dist. LEXIS 163197, at *11-12 (quoting *Mortarino v. Consultant Eng'g. Servs. Inc.*, 251 Va. 289, 293 (1996)). When a statement involves "value judgments, the statement has generally been held to be an opinion…" *Id*. at *12. TCU's alleged "safe and supportive environment," "free from discrimination" statements, as viewed in context of OIE's website, reflect OIE's goal of responding to and conducting investigations of sexual harassment reports. Such representations are expressions of

[7] When an issue is deemed procedural under the conflict of law rules, such as the heightened pleading requirements under Rule 9, the court shall apply its rules and procedures. *See Hatfill v. N.Y. Times Co.*, 459 F. Supp. 2d 462, 465 (E.D. Va. 2006) (citing *Clark v. Clark*, 11 Va. App. 286, 300 (1990)).

opinion. *See Id.* at *12-13. TCU's statements reaffirm its obligations to comply with federal discrimination laws, at a minimum. To the extent TCU's statements reflect that it aims higher than the law requires, the selectively quoted partial representations in Plaintiff's Complaint fail to establish either a legally enforceable heightened duty or the existence of fraud.

Rule 9(b) also requires that a party allege generally malice, intent, knowledge, and other conditions of a person's mind. Fed. R. Civ. P. 9(b). Although Rule 9(b) does not require a heightened pleading standard for alleging conditions of a party's mind, those conditions must still be alleged in accordance with the Rule 8 plausibility standard. *NeuroCytonix, Inc. v. Six Kind LLC*, Civil Action No. 1:24-cv-265, 2024 U.S. Dist. LEXIS 211575, *19 (E.D. Va. Nov. 20, 2024) (citing *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012)).

Further, Jane fails to allege with particularity that TCU either knew the representations were false or made such representations reckless as a positive assertion without any knowledge of its truth. Jane generally states, "TCU knew that its representations…were false," and lists various conclusory and out-of-context allegations regarding sexual assault and the way it is handled by TCU. *See* ECF 1 ¶ 19(a)—(o). The Court is not required to accept such conclusory vague statements. *See Spaulding*, 714 F.3d at 781.; *Umbrella Inv. Grp. v. Wolters Kluwer Fin. Servs.*, 972 F.3d 710, 713 (5th Cir. 2020). The Complaint must "adequately explain why the statement was fraudulent when made." *Brown-Mendoza v. King*, No. 3:25-CV-0132-B, 2025 U.S. Dist. LEXIS 103923, at *7 (N.D. Tex. June 2, 2025).

For example, Jane references Texas Senate Bill 212 reports, Ex. C, as evidence that TCU knew its statements were false. ECF 1 ¶¶ 60-65. However, TCU's reports do not discuss gender and provide specific reasons for why certain sexual harassment reports did not result in a disciplinary investigation. Ex. C. The Complaint disingenuously omits these facts to

mischaracterize the importance of the reports. TCU's statements, when viewed in their full context, concern OIE's commitment to handle and investigate sexual assault claims. Jane is unable to allege with particularity that TCU knew its statements were false at the time they were made because Jane does not rely on any factual statements; instead, she relies on non-factual opinion statements, which cannot be disproved. *Devine v. Plute Home* Corp, 2015 U.S. Dist. LEXIS 163197, at *12.

Jane also fails to plead sufficient facts to claim that TCU intended to induce her to act upon its alleged misrepresentations. To prove that a defendant had reason to expect reliance, the maker of the misrepresentation "must have information that would lead a reasonable man to conclude that there is an especial likelihood that it will reach those persons and will influence their conduct." *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co*., 51 S.W.3d 573, 581 (Tex. 2001) (citing to Restat. 2d of Torts, § 531). There must be something in the situation known to the maker that "would lead a reasonable man to govern his conduct on the assumption that this will occur." *Id*. The intent to induce reliance must be distinguished from mere general foreseeability of reliance, which is insufficient to meet this standard. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 219 (Tex. 2011) ("intent-to-induce reliance is not satisfied by evidence that a misrepresentation may be read in the future by some unknown member of the public or of a specific industry"). As argued previously, TCU's alleged statements relate to its objectives for the campus community, and they are not guarantees of impossible levels of personal security in a large campus community. There is nothing in TCU's alleged statements that Jane points to which would lead TCU to know there was an especial likelihood that they would reach Jane and influence her specific conduct.

Moreover, the alleged representations are public statements espousing a commitment to investigating reports of sexual assaults, which cannot be held in the same realm or relied on as guaranteeing protection from the acts of third parties. Nothing in Jane's Complaint suggests that

TCU's statements were any more compelling to her than other universities' statements about their own Title IX compliance or aspirations for a safe campus community that is free of discrimination or harassment. Further, Jane fails to make a connection between the "severe personal injury" she suffered and TCU's alleged misrepresentations. A plaintiff must plead and offer proof of a pecuniary loss which is directly traceable to, and which resulted from the plaintiff's reliance on the defendant's false representation. *McCurry v. Aetna Cas. & Sur. Co.*, 742 S.W.2d 863, 867 (Tex. App. 1987). Thus, Jane must allege proximate cause and damages to recover on a fraud claim. *Alanis v. Valdespino*, 2012 Tex. App. LEXIS 4065, at *14 (Tex. App. May 23, 2012). The harm that Jane complains of did not result from TCU's alleged statements regarding its safe environment and instead resulted from the sexual assault she suffered. ECF 1 ¶ 75. There is no proximate cause between the emotional harm Jane suffered from her assault and the alleged statements made by TCU about its campus safety and environment.

Jane states that as a "proximate result of TCU's fraud, [she] suffered severe personal injury as well as economic harm, as explained further below." ECF 1 ¶ 78. Texas follows a "fair notice" pleading standard, which looks to whether the opposing party can ascertain from the pleadings the nature and basic issues of the controversy. *Schlueter v. Carey*, 112 S.W.3d 164, 168 (Tex. App. 2003). Stating "as explained further below" is wholly insufficient to put TCU on fair notice of Jane's alleged harm. Although Jane alleges personal injuries and economic harm throughout her Complaint, it should not be TCU's burden to attempt to pinpoint the scope of Jane's damages.

Finally, fraudulent inducement is a "distinct category" of actual fraud that shares the same elements but "involves a promise of future performance made with no intention of performing at the time it was made." *Mundheim v. Lepp*, No. 05-19-01490-CV, 2021 Tex. App. LEXIS 3786, at *9 (Tex. App. May 13, 2021). Fraudulent inducement arises only in the context of a contract. As

such, it is prudent that a plaintiff plead the existence of a contract to bring a fraudulent inducement claim. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Jane fails to: (1) plead the existence of a contract between TCU and herself; and (2) plead facts to specifically state what promise of future performance TCU made, and how TCU had no intention of performing said promise. As such, Jane has failed to state a claim for fraud or fraudulent inducement.

**C. Jane Fails to State a Claim for Intentional Infliction of Emotional Distress.**

Under Virginia's choice of law rule, Texas law governs Jane's IIED claim. To state an IIED claim under Texas law, plaintiff must show: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffmann-Law Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). "[A] claim for intentional infliction of emotional distress will not lie if emotional distress is not the intended or primary consequence of the defendant's conduct." *Gte Southwest v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999). To be extreme and outrageous, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Zeltwanger*, 144 S.W.3d at 445.

Under Texas law, IIED is a "gap-filler" tort, available only in rare circumstances where a defendant's conduct is so egregious that no other recognized legal theory of redress is available. *Id.* at 447 (citing *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). IIED may not be used "to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines." *Id.* at 447 (quoting *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). Nor may it be used to evade statutory remedial schemes. *Id.* This principle applies even when the plaintiff asserts—successfully or

unsuccessfully—a more specific statutory claim; if the gravamen of the complaint is covered by another cause of action, IIED is unavailable. *Id.* at 448.

Here, every factual allegation in Count III is simply a deliberate indifference claim under Title IX repackaged under a different name. Title IX provides the exclusive analytical framework for imputing liability to an institution for "deliberate indifference" to discrimination or harassment. *See Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). Jane relies on TCU's investigative steps, disciplinary decisions, and institutional responses that would typically form the basis of a Title IX theory. The only wrongdoings Jane alleges outside of that framework relate to a purported "contract" to mediate, which forms the basis of her breach of contract claim. ECF ¶¶ 85, 89-92. As such, there is "no gap to fill," and her IIED claim fails as a matter of law. *See Zeltwanger*, 144 S.W.3d at 447–48.

Jane improperly alleges an IIED claim to circumvent the legal limitations on the damages recoverable in a Title IX action. Jane is precluded from seeking emotional distress damages in a Title IX action. *See B.R. v. F.C.S.B.*, 718 F. Supp. 3d 504, 510 (E.D. Va. 2024) (*citing Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2002)). Under Texas law, IIED may not be used to thwart those limitations. *Zeltwanger*, 144 S.W.3d at 445.

Even if the IIED claim was not preempted, Jane has not sufficiently pleaded a claim of IIED. Jane has not alleged any facts that establish that TCU acted intentionally or recklessly to inflict harm. She claims TCU has a demonstrated pattern of failing to investigate reports of sexual assault, but she misstates the number of reports, wrongly assumes each report is an individual case, and ignores the publicly listed reasons why certain reports did not result in investigations. *See* Ex. C at 3. Without further support, she states that "TCU knew to a moral certainty" that its alleged "decades of deliberate indifference" would inflict severe emotional distress on the female students.

ECF ¶ 80-81. The court should not accept this legal conclusion. *Twombly,* 550 U.S. at 555.

Jane also fails to sufficiently plead facts establishing extreme and outrageous conduct. TCU conducted a thorough investigation, in a timely manner, ultimately suspending the Respondent. None of these actions, or the alleged failure to mediate, goes "beyond all possible bounds of decency" so as to be "utterly intolerable in a civilized community." *Gonzales v. Gonzales*, 704 S.W.3d 54, 67-70 (Tex. App. – Austin [3rd Dist.] 2024) (finding sufficient evidence where the husband threatened to kill his wife, threatened to take their child away, hid cameras in the home, and was physically violent); *Mayhew v. Dealey*, 143 S.W.3d 356, 369 (Tex. App. – Dallas [5th Dist.] 2004) (finding sufficient evidence where the defendant threatened to kill his father, and forced his father to be naked and awake when defendant shot him).

Further, Jane failed to sufficiently plead that her emotional distress is due to the actions of TCU. The University recognizes that experiencing any form of sexual misconduct can be a painful experience and may produce unanticipated emotional responses. Here, Jane alleges anxiety, fear, a sense of lack of control, inability to concentrate, insomnia, humiliation, shame, mood swings, and post-traumatic stress disorder. ECF 1 ¶ 86. She includes a "distrust of others, especially men, that make it harder to have a normal, loving relationship with others." *Id.* TCU takes seriously all of Jane's alleged symptoms. However, it is unclear from her Complaint how TCU's actions are the proximate cause of her alleged emotional distress. Rather, she seems to concede that her conditions were the proximate result of the assault, not actions by TCU. ECF ¶ 87 ("While some of these conditions may improve with time, the emotional harm from rape does not go away"). Jane provides no factual allegations that suggest any of the alleged symptoms began after the Title IX investigation. Nor does she associate the symptoms with any specific action by TCU. Rather, Jane requests that TCU is found vicariously liable for a third party's wrongful acts. This request is

improper. Jane's Complaint does not sufficiently plead allegations in support of proximate cause, and as such her Complaint is deficient as a matter of law. *Zeltwanger*, 144 S.W.3d at 445. Therefore, Jane has failed to state a claim of IIED for which she is entitled to relief.

**D. Jane Fails to State a Claim for Breach of Contract.**

Under either Virginia or Texas law, to sufficiently plead a claim for breach of contract, a plaintiff must allege the existence of a valid contract. *See Smith Int'l, Inc. v. Egle Grp. LLC,* 490 F.3d 380, 387 (5th Cir. 2007); *Irving v. PAE Gov't Servs.*, 249 F. Supp 3d 826, 837 (E.D. Va. 2017) (citing to *Filak v. George*, 267 Va. 612, 619 (2004)). Jane alleges that TCU entered into an agreement with her to use a mediator chosen by TCU and to attend mediation in person in Virginia on August 11, 2025. ECF 1 ¶ 53. Jane further alleges that TCU breached this agreement when it failed to appear at the mediation on August 11, 2025. ECF 1 ¶ 55. This Court must analyze whether the purported contract to mediate is a valid and enforceable contract.

In *Beazer,* this Court held that it is "well settled under Virginia law that agreements to negotiate at some point in the future are unenforceable." *Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, 235 F. Supp. 2d 485, 490 (E.D. Va. 2002).[8] If it is accepted that Jane and TCU had agreed to mediate, Virginia law has made it clear that such an agreement to "'negotiate open issues in good faith' to reach a 'contractual objective within [an] agreed framework' will be construed as an agreement to agree rather than a valid contract." *Virginia Power Energy Mktg., Inc., v. EQT Energy, LLC*, 3:11CV630, 2012 U.S. Dist. LEXIS 98553, at *12 (E.D. Va. July 15, 2012) (quoting *Beazer*, 235 F. Supp. 2d at 491). Moreover, mediation is a voluntary non-binding

[8] Texas law similarly holds that "[a]n agreement to enter into negotiations in the future cannot be enforced because the court has no means to determine what sort of contract the negotiations would have produced. Courts have long held that an agreement to enter into negotiations in the future is unenforceable." *Shields v. Delta Lake Irrigation Dist.*, No. 13-01-622-CV, 2006 Tex. App. LEXIS 4082, at *32 (Tex. App. May 11, 2006).

process that is part of litigation. Although parties are not obligated to resolve cases without court involvement, TCU was amenable to mediation with Jane so long as it was to be productive and in good faith. When it became clear that mediation was not going to be productive or in good faith, TCU decided not to go forward with mediation. TCU has no legal duty to go forward with a voluntary settlement process, and it has every right to present its defenses in this forum.

Finally, Jane alleges that she has "incurred substantial legal expenses, travel expenses and the cost of the mediator in Virginia." ECF 1 ¶ 91. Virginia follows the "American Rule," wherein each party bears their own litigations costs. *See Russell Cty. Dep't. of Soc. Servs. v. O'Quinn*, 259 Va. 139, 142 (2000). TCU is not liable for the expenses incurred by Jane in preparation for a mediation that did not go forward as part of a litigated and disputed claim.

## CONCLUSION

For the reasons set forth herein, and those presented at oral arguments, Defendant Texas Christian University respectfully requests this Court grant this motion to dismiss or transfer venue.

Dated: April 24, 2026

Respectfully submitted,

**TEXAS CHRISTIAN UNIVERSITY**
By Counsel

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

*<u>/s/ Jason R. Waters</u>*

Jason R. Waters (VSB No. 73887)
Lauren E. Gilman (VSB No. 101558)
Nicole K. Rocha (VSB No. 100669)
8444Westpark Drive – Suite 510
McLean, VA 22102-5102
(703) 245-9300 (telephone)
(703) 245-9301 (facsimile)
Jason.Waters@wilsonelser.com
Lauren.Gilman@wilsonelser.com
Nicole.Rocha@wilsonelser.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing to all counsel of record:

Thomas M. Wolf (VSB No. 18234)
Joseph M. Rainsbury (VSB No. 45782)
Clarissa K. Pintado (VSB No. 86882)
O'Hagan Meyer, PLLC
411 E. Franklin Street, Suite 500
Richmond, Virginia 23219
(804) 361-4551 (telephone)
(804) 237-250 (facsimile)
twolf@ohaganmeyer.com
jrainsbury@ohaganmeyer.com
cpintado@ohaganmeyer.com
*Counsel for Plaintiff*

Alison C. Duffy (VSB No. 90113)
O'Hagan Meyer, PLLC
256 Huntington Ave., Suite 204
Alexandria, VA 22303
(703) 775-8606 (telephone)
aduffy@ohaganmeyer.com
*Counsel for Plaintiff*

*/s/ Jason R. Waters*
Jason R. Waters (VSB No. 73887)
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
8444Westpark Drive – Suite 510
McLean, VA 22102-5102
(703) 245-9300 (telephone)
(703) 245-9301 (facsimile)
Jason.Waters@wilsonelser.com
*Counsel for Defendant*