**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **JANE DOE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TEXAS CHRISTIAN UNIVERSITY,**<br><br>**Defendant.** | **Case No.: 1:25-cv-2299** |

# DEFENDANT TEXAS CHRISTIAN UNIVERSITY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE

Jason R. Waters (VSB No. 73887)
Lauren E. Gilman (VSB No. 101558)
Nicole K. Rocha (VSB No. 100669)
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
8444Westpark Drive – Suite 510
McLean, VA 22102-5102
(703) 245-9300 (telephone)
(703) 245-9301 (facsimile)
Jason.Waters@wilsonelser.com
Lauren.Gilman@wilsonelser.com
Nicole.Rocha@wilsonelser.com
*Counsel for Defendant Texas Christian University*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. Jane's Opposition Failed to Establish Personal Jurisdiction Over TCU .......... 1

A. TCU did not purposefully avail itself of the privilege of conducting activities in Virginia. .......... 2

B. Jane's claims do not arise out of TCU's alleged Virginia activities. .......... 2

C. The exercise of personal jurisdiction is not constitutionally reasonable. .......... 7

II. The Eastern District of Virginia is an Improper Venue. .......... 8

III. Jane Fails to State a Claim for Which She is Entitled to Relief. .......... 10

A. Jane has not Met Her Pleading Burden to Establish Fraud. .......... 10

B. Jane is Pleading a Title IX Violation Under a Different Name .......... 12

C. Jane Fails to State a Claim Pursuant to the VCPA .......... 14

D. Jane Fails to State a Claim for Fraudulent Inducement .......... 16

E. Jane Fails to State a Claim for Breach of Contract. .......... 19

CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albanese v. WCI Communities, Inc.*,
530 F. Supp. 2d 752 (E.D. Va. 2007) ....................11

*ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*,
293 F.3d 707 (4th Cir. 2002) ....................3

*Anderson v. Durant*,
550 S.W.3d 605 (Tex. 2018)....................17

*Barile v. Univ. of Va.*,
2 Ohio App. 3d 233, 441 N.E.2d 608 (1981)....................5

*Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*,
235 F. Supp. 2d 485 (E.D. Va. 2002) ....................19

*Blanks v. Taos Ski Valley, Inc.*,
706 F. Supp. 515 (E.D. Tex. 1988)....................7

*B.R. v. F.C.S.B.*,
718 F. Supp. 3d 504 (E.D. Va. 2024) ....................14

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017)....................1

*Carefirst of Md., Inc v. Carefirst Pregnancy Ctrs., Inc.*,
334 F.3d 390 (4th Cir. 2003) ....................4

*Cassell v. Loyola Univ.*,
294 F. Supp. 622 (E.D. Tenn. 1968)....................7

*Consulting Eng'rs Corp. v. Geometric, Ltd.*,
561 F.3d 273 (4th Cir. 2009) ....................2, 7

*Crabtree v. Aon Ins. Managers Bermuda Ltd.*,
No. 23-1959, 2025 U.S. App. LEXIS 7230 (4th Cir. Mar. 28, 2025) ....................2

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
596 U.S. 212 (2002)....................14

*Cyberlock Consulting, Inc. v. Info. Experts, Inc.*,
939 F. Supp. 2d 572 (E.D. Va. 2013) ....................19, 20



336382730v.1

*Davis v. Baylor Univ.*,
976 S.W.2d 5 (Mo. Ct. App. 1998)....................5

*Davis v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999)....................13, 16

*Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. Pshp.*,
213 F.3d 175 (4th Cir. 2000)....................12

*FireClean LLC v. Tuohy*,
No. 1:16-cv-294-JCC-MSN, 2016 U.S. Dist. LEXIS 109620 (E.D. Va. Jun. 14, 2016)....................4

*In re FirstMerit Bank, N.A.*,
52 S.W.3d 749 (Tex. 2001)....................17

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
592 U.S. 351 (2021)....................3

*Garcia v. ECPI Univ. LLC*,
814 F. Supp. 3d 639, 2026 U.S. Dist. LEXIS 7636 (E.D. Va. 2026)....................12, 15, 16, 18

*Gehling v. St. George's Sch. of Med.*,
773 F.2d 539 (3d Cir. 1985)....................7

*Grayson v. Anderson*,
816 F.3d 262 (4th Cir. 2016)....................1

*Hahn v. Vermont Law School*,
698 F.2d 48 (1st Cir. 1983)....................5

*Hardnett v. Duquesne University*,
897 F. Supp. 920 (D. Md. 1995)....................7

*Hazaimeh v. United States Bank Nat'l Ass'n*,
94 F. Supp. 3d 741 (E.D. Va. 2015)....................10

*Insteel Indus. v. Constanza Contr. Co.*,
276 F. Supp. 2d 479 (E.D. Va. 2003)....................17

*Intranexus, Inc. v. Siemens Med. Sols. Health Servs. Corp.*,
227 F. Supp. 2d 581 (E.D. Va. 2002)....................9

*Jennings v. Univ. of N.C.*,
482 F.3d 686 (4th Cir. 2007)....................13

*Lane v. Halliburton*,
529 F.3d 548 (5th Cir. 2008)....................17

*Mem'l Hosp. Sys. v. Blue Cross & Blue Shield*,
830 F. Supp. 968 (S.D. Tex. 1993) ....................6, 7

*Mundheim v. Lepp*,
No. 05-19-01490-CV, 2021 Tex. App. LEXIS 3786 (Tex. App. May 13, 2021)....................17

*Myelle v. Am. Cyanamid Co.*,
57 F.3d 411 (4th Cir. 1995) ....................10

*New Venture Holdings, L.L.C. v. DeVito Verdi, Inc.*,
376 F. Supp. 3d 683 (E.D. Va. 2019) ....................7

*Perdue Foods LLC v. BRF S.A.*,
814 F.3d 185 (4th Cir. 2016) ....................2

*Performance Food Grp. Co. v. Java Trading Co.*,
No. 3:05CV447, 2005 U.S. Dist. LEXIS 50518 (E.D. Va. Oct. 4, 2005) ....................19

*Perrow v. Grand Canyon Educ., Inc.*,
No. 2:09-cv-670, 2010 U.S. Dist. LEXIS 9538 (S.D. Ohio Jan. 15, 2010)....................5

*Primov v. Serco, Inc.*,
96 Va. Cir. 121 (Fairfax County 2017)....................19

*Schlueter v. Carey*,
112 S.W.3d 164 (Tex. App. 2003)....................18, 19

*Siskind v. Villa Foundation for Educ., Inc.*,
642 S.W.2d 434 (Tex. 1982)....................6, 7

*Sunbelt Corp. v. Noble, Denton & Assocs.*,
5 F.3d 28 (3d Cir. 1993)....................6, 7

*Sykes v. Nash Distribution, Inc.*,
Civil Action No. 1:21-cv-897, 2021 U.S. Dist. LEXIS 264541 (E.D. Va. Dec. 2, 2021) ....................19

*Watiti v. Walden Univ.*,
Civil Action No. 07-4782 (JAP), 2008 U.S. Dist. LEXIS 43217 (D.N.J. May 30, 2008) ....................5

*World-Wide Volkswagen Corp v. Woodson*,
444 U.S. 286 (1980)....................7

*Young v. New Haven Advocate*,
315 F.3d 256 (4th Cir. 2002) ....................3

*Zurawski v. Off. Of the AG-Commonwealth of Va.*,
No. 1:20-cv-00708, 2020 U.S. Dist. LEXIS 272729 (E.D. Va. Oct. 20, 2020)........................9

**Statutes**

20 U.S.C. § 1681(a) ..........................................................................................................16

28 U.S.C. § 1391(b)(1) ..........................................................................................................8

28 U.S.C. § 1391(b)(2) ..........................................................................................................8

Title IX...........................................................................................1, 12, 13, 14, 15, 16

Virginia Consumer Protection Act...........................................................1, 8, 10, 14, 15, 16, 18

**Other Authorities**

Texas Senate Bill 212 ..........................................................................................................11

**Rules**

Federal Rule of Civil Procedure 9(b)....................................................................15, 16, 17

Defendant Texas Christian University ("TCU") submits this Reply Memorandum in support of its Motion to Dismiss, or in the Alternative, to Transfer Venue:

## INTRODUCTION

Jane's Opposition failed to justify a finding that this Court has personal jurisdiction over TCU, to establish that the Eastern District of Virginia is a proper venue, or to show that her pleadings state a viable cause of action. The indisputable fact of this case is that ***Jane chose to leave Virginia*** in favor of receiving an education in Texas. TCU sold no goods and provided no services for Jane's benefit or consumption in Virginia. But for the events that occurred on TCU's campus, Jane would not be trying to recast a Title IX claim under Virginia's Consumer Protection Act to secure what she perceives will be a more favorable forum. Therefore, Jane's Opposition failed to overcome TCU's showing that this Court should either dismiss this action or transfer the case to the Northern District of Texas.

## ARGUMENT

### I. Jane's Opposition Failed to Establish Personal Jurisdiction Over TCU

Plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). Due process allows for two forms of personal jurisdiction, (1) general jurisdiction; and (2) specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017). Jane's Opposition concedes that this Court may not exercise general jurisdiction over TCU. *See* ECF 17, Pl. Opp'n Br. at 7 n.2. As such, TCU's Reply focuses on Jane's inadequate arguments regarding specific jurisdiction.

The Fourth Circuit applies a three-prong test for specific jurisdiction: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the [forum] [s]tate; (2) whether the plaintiffs' claims arise out of those activities directed at the [forum] [s]tate; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."

*Crabtree v. Aon Ins. Managers Bermuda Ltd.*, No. 23-1959, 2025 U.S. App. LEXIS 7230, at *4 (4th Cir. Mar. 28, 2025). The plaintiff "must prevail on each prong." *Id*. quoting *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016). Jane's Opposition fails to meet this test.

**A. TCU did not purposefully avail itself of the privilege of conducting activities in Virginia.**

Jane's Opposition ignores the Fourth Circuit's non-exhaustive factors in analyzing whether TCU has purposefully availed itself of Virginia's jurisdiction. Among others, the Fourth Circuit considers the following factors: whether the defendant made in-person contact with the forum resident in the forum state; whether the performance of contractual duties was to occur in the forum state; and the nature, quality, and extent of communications about the business being transacted. *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (citations omitted). TCU's alleged recruitment activity in Virginia, with Jane and other students, does not amount to the type of contacts that could reasonably lead TCU to anticipate being haled into a Virginia court. Jane's enrollment agreement with TCU concerned an education that TCU would provide in Texas. TCU did not agree to provide any goods or services to Jane in the Commonwealth. Jane chose to leave Virginia for her education. At no point did TCU make in-person contact with Jane in Virginia, and the only direct communication between the parties occurred by mail and email. ECF 1 ¶ 10. TCU did not purposefully avail itself of the privilege of conducting activities in Virginia.

**B. Jane's claims do not arise out of TCU's alleged Virginia activities.**

Jane's claims neither arise out of nor relate to TCU's recruitment activity in Virginia and such generalized contacts do not support specific jurisdiction. Despite Jane's efforts to attach the "consumer fraud" label to her Complaint, her claims arise entirely from a reported sexual assault on TCU's campus in Texas. *See* ECF 1 ¶¶ 26-28, 31, 36, 37, 39, 40, 44, and 49. In response, Jane focuses on the omission of the phrase "or relate to" in the Fourth Circuit's three-part test of the

due-process requirement. (ECF 17 at 10 *n. 3.) This argument misconstrues *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 362 (2021), in which the Court held that the "relate to" "incorporates real limits, as it must adequately protect defendants foreign to a forum." *Ford Motor Co.*, 592 U.S. at 362. Jane's argument obliterates any due process limitations in favor of finding any potential nexus to the preferred forum sufficient to establish jurisdiction.

As a further example, Jane claims that TCU's internet activity directed at Virginia gives rise to the exercise of personal jurisdiction over TCU, she is mistaken. A state may, consistent with due process, "exercise judicial power over a person outside of the [s]tate when that person (1) directs electronic activity into the [s]tate, (2) with the manifested intent of engaging in business or other interactions within the [s]tate, and (3) that activity creates, in a person within the [s]tate, a potential cause of action cognizable in the [s]tate's courts." *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002) (citing *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)). An act of placing information on the internet, however, is not sufficient by itself to subject that entity or individual to personal jurisdiction in "each [s]tate in which the information is accessed" *ALS Scan* at 712. For personal jurisdiction to attach, the actor must, through its internet postings, manifest an intent to target Virginians. *Young* at 263. "Something more than posting and accessibility is needed" to indicate that TCU purposefully directed their activity in a substantial way to Virginia. *Id*. Nothing in Jane's Complaint alleges that TCU's internet recruitment communications were specifically tailored to Virginia residents. Any prospective student outside Virginia would have access to the same information. TCU's internet recruitment communications were not posted with a manifest intent of targeting Virginia residents.

Similarly, Jane claims that TCU's data resides on a server in Virginia. However, the Fourth Circuit and this Court have rejected attempts to ground specific jurisdiction in the location of a

server. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) ("It is unreasonable to expect that, merely by utilizing servers owned by a Maryland-based company, [defendant] should have foreseen that it could be haled into a Maryland court and held to account for the contents of its website."); and *FireClean LLC v. Tuohy*, No. 1:16-cv-294-JCC-MSN, 2016 U.S. Dist. LEXIS 109620, at *17 (E.D. Va. Jun. 14, 2016) ("This comports with common sense; the physical location of a server where information published to the internet is stored will often be a matter of happenstance, known neither to the writer nor the reader).

Further, Jane's argument that an agreement to mediate in Virginia creates personal jurisdiction for the underlying claim is utterly absurd. Jane cites no authority in which a court predicated specific jurisdiction for a claim on a subsequent agreement to mediate the underlying dispute. The underlying allegations and the agreement to mediate are separate occurrences, and Jane's case is not about TCU's decision against mediating with her in Virginia. This case is about the events that occurred in Texas, and any suggestion otherwise is just disingenuous. TCU expressed a willingness to mediate in Virginia so long as the mediation was to be in good faith and productive. TCU expressly informed Plaintiff's counsel that its participation in mediation would not constitute a waiver of any defenses, including lack of personal jurisdiction or improper venue, and when Plaintiff failed to confirm this understanding and when it became clear that mediation would be unproductive, in advance of the mediation TCU advised Jane's counsel it did not wish to continue pre-suit settlement discussions.[1] If Jane, her counsel, and Judge O'Grady appeared at the appointed time, they did so with advance notice of the fact that TCU would not be appearing.

[1] Plaintiff counsel's reliance on these pre-mediation communications to establish an enforceable contract raises the likelihood of a need to depose Plaintiff's counsel, on this and several other issues, which implicates Virginia's advocate-witness rule, should the Court entertain this theory of jurisdiction and liability.

Finally, the facts of this specific case are distinguishable from the non-binding authority on which Jane relies concerning a finding of jurisdiction over an out-of-state school when the plaintiff's claims relate to the school's forum-directed marketing activities. In both *Perrow v. Grand Canyon Educ., Inc.*, and *Watiti v. Walden*, the courts found they had specific personal jurisdiction over non-forum online universities who not only solicited students in the forum states but also provided educational services to the students in the forum states. *See Perrow v. Grand Canyon Educ., Inc.*, No. 2:09-cv-670, 2010 U.S. Dist. LEXIS 9538, at *15 (S.D. Ohio Jan. 15, 2010); *Watiti v. Walden Univ.*, Civil Action No. 07-4782 (JAP), 2008 U.S. Dist. LEXIS 43217, at *26-27 (D.N.J. May 30, 2008). Although TCU conducted recruitment activities in Virginia, unlike the online universities in *Perrow* and *Watiti,* TCU has never provided educational services to Jane in Virginia, and there is no allegation to the contrary.

In *Barile v. University of Virginia*, Ohio exercised specific jurisdiction over the non-resident Virginia university, which "aggressively pursued" a student-athlete in Ohio, including several visits to the student's Ohio residence. *Barile v. Univ. of Va.*, 2 Ohio App. 3d 233, 234, 236, 441 N.E.2d 608, 614 (1981). Similarly, in *Davis v. Baylor University*, the non-forum Texas university and its coaches engaged in written correspondence, dozens of telephone calls, and numerous personal visits with plaintiff, including as many as ten total trips to Missouri to recruit the plaintiff. *Davis v. Baylor Univ.*, 976 S.W.2d 5, 6 (Mo. Ct. App. 1998). In *Hahn v. Vermont Law School*, personal specific jurisdiction over a non-forum Vermont law school existed in Massachusetts because the schools' recruitment efforts were part of the school's targeted efforts to serve the market for legal education in the forum and Massachusetts students constituted approximately ten percent of the law school class. *Hahn v. Vermont Law School,* 698 F.2d 48, 51-52 (1st Cir. 1983). Unlike these cases, Jane was not a recruited athlete, she did not receive in-

person visits from TCU faculty, and there is no basis to claim that TCU's recruitment efforts were part of an institutional strategy to serve the market for higher education in Virginia.

Jane's reliance on *Siskind v. Villa Foundation for Educ., Inc.*, is highly questionable. Jane asks this Court to apply the Texas Supreme Court's reasoning in *Siskind* with "equal force" simply because both cases involve out-of-state educational institutions who "successfully recruited" students through their recruitment activity in the forum state. 642 S.W.2d 434 (Tex. 1982); ECF 17 at 12. *Siskind* involved Texas residents who enrolled their son in an Arizona school for students who lacked motivation. *Id.* at 435. The Arizona school solicited students through national magazines and local telephone books. *Id.* The contract between Siskind and the Arizona school provided that if Siskind's son left during the school year, his tuition would be reimbursed. *Id*. The son was later expelled from the Arizona school, who refused to refund the son's tuition. *Id*. The Texas Supreme Court found that there was a "connection between Siskind's claim for breach of contract" and the Arizona school's forum contacts. *Id.* at 437. The court found that despite the Arizona school's forum contacts being "truly minimal," the quality of these contacts was "substantial," so as to confer personal jurisdiction, as the associate director of the school admitted that the Arizona school "could not survive if its enrollment" did not include Texas students. *Id*.

This case differs vastly from *Siskind*. TCU's generalized recruitment activity in Virginia does not bear the same direct link to Jane's injury as did Siskind's claim to recover money lost under a specific provision of his contract with the Arizona school. Regardless, *Siskind* is a Texas Supreme Court decision. It does not interpret either Virginia's long-arm statute or Fourth Circuit authority on personal jurisdiction. It is simply not binding on this Court or even authoritative here. Moreover, subsequent federal decisions regarding personal jurisdiction of out-of-state universities reaching the opposite conclusion are far more compelling factual and legal analogies to *Siskind*.

*See, e.g.*, *Sunbelt Corp. v. Noble, Denton & Assocs*., 5 F.3d 28, 32 (3d Cir. 1993) (distinguishing *Siskind*); *see also Mem'l Hosp. Sys. v. Blue Cross & Blue Shield*, 830 F. Supp. 968, 971 (S.D. Tex. 1993); *Blanks v. Taos Ski Valley, Inc*., 706 F. Supp. 515, 516-17 (E.D. Tex. 1988). These and other decisions regarding general recruiting efforts as a basis for personal jurisdiction over a university show that *Siskind* is not good authority here.

**C. The exercise of personal jurisdiction is not constitutionally reasonable.**

Jane ignores the Fourth Circuit's non-exhaustive factors for determining whether the exercise of personal jurisdiction is constitutionally reasonable. Specifically, Jane fails to address: (1) the burden on TCU in litigating in Virgina; (2) Virginia's interest in adjudicating this dispute; (3) Jane's interest in obtaining convenient and effective relief; (4) the shared interest of Virginia and Texas in obtaining an efficient resolution of the disputes; and (5) the interests of Virginia and Texas in furthering substantive social policies. *See Consulting Eng'rs Corp.* at 279; *see also New Venture Holdings, L.L.C. v. DeVito Verdi, Inc.,* 376 F. Supp. 3d 683, 691 (E.D. Va. 2019) (citing *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 297 (1980)).

Texas has the undeniably stronger interest in adjudicating the dispute. Virginia does not have any connection to the alleged conduct underlying Jane's claims, aside from her unilateral contacts with Virginia. As the reported assault and TCU's response occurred exclusively in Texas, the exercise of personal jurisdiction over TCU in Virginia would be unreasonable and inequitable. Moreover, extending jurisdiction to universities in every state in which they recruit would create a perverse result not required under or comporting with due process. *See Cassell v. Loyola Univ*., 294 F. Supp. 622, 624 (E.D. Tenn. 1968); *Hardnett v. Duquesne University*, 897 F. Supp. 920, 925 (D. Md. 1995); *Gehling v. St. George's Sch. of Med.*, 773 F.2d 539, 542-43 (3d Cir. 1985).

**II. The Eastern District of Virginia is an Improper Venue.**

Venue is not proper under 28 U.S.C. § 1391(b)(1) because TCU does not "reside" in Virginia for venue purposes when personal jurisdiction is lacking. Venue is likewise improper under § 1391(b)(2) because a "substantial part" of the events or omissions giving rise to the claims occurred in Texas, where the reported assault, investigation, hearing, appeal, and sanction decisions transpired. Jane's contrary theory hinges on her pre-enrollment reliance in Virginia and a later alleged failure to attend a Virginia mediation, but neither argument reframes the gravamen of this case, which challenges Texas campus events and Texas institutional actions.

Jane's Opposition asserts that venue is proper under § 1391(b)(2) because while she was in Virginia she relied on TCU's statements, accepted admission and a scholarship, and she continues to experience injury in Virginia. She also claims TCU's decision to not appear for a mediation in Virginia makes venue proper. ECF 17 at 14. Those assertions mischaracterize the "substantial part of the events or omissions giving rise to the claim" requirement and disregard the Complaint's own Texas-centered allegations. *See* ECF 1 ¶¶ 19, 26-29, 31-49. Jane cannot plead a Virginia Consumer Protection Act ("VCPA") or fraud claim without relying on allegations concerning the sexual assault that occurred on TCU's Fort Worth campus or TCU's institutional response. Jane's reliance on her pre-enrollment review of recruiting materials in Virginia cannot convert those Texas-centered facts into a Virginia-venue case. Jane consciously chose to leave the Commonwealth. Jane's framing would make venue proper wherever a student read a brochure or clicked a website, no matter how completely the alleged wrongs transpired somewhere else. Nor does the mediation allegation salvage venue in Virginia. As TCU has shown, the supposed "agreement" to mediate is, as a matter of law, an unenforceable agreement to negotiate and cannot supply a standalone basis for venue. The alleged failure to appear for a voluntary, pre-suit

settlement session about a Texas dispute is at most collateral to the substance of Jane's claims; it does not transform the locus of the operative acts and omissions from Texas to Virginia.

Even if the Court were to conclude that venue is technically proper, transfer to the Northern District of Texas is warranted. Jane's suggestion that her choice of forum should control misses the point that this District has little connection to the operative facts, which diminishes the weight ordinarily afforded to a plaintiff's home forum. *See Zurawski v. Off. Of the AG-Commonwealth of Va.*, No. 1:20-cv-00708, 2020 U.S. Dist. LEXIS 272729, at *10-11 (E.D. Va. Oct. 20, 2020). "[T]he weight accorded a plaintiff's choice varies in proportion to the connection between the forum and the cause of action" and "the plaintiff's chosen venue is not given such substantial weight when . . . the cause of action bears little or no relation to that forum." *See Intranexus, Inc. v. Siemens Med. Sols. Health Servs. Corp.*, 227 F. Supp. 2d 581, 583 (E.D. Va. 2002) (internal quotations omitted). In *Intranexus*, the plaintiff was a Virginia corporation, that bought software from the defendant and used the software mainly in Virginia. *Id.* at 582. But here, Jane left Virginia and moved to Texas to receive an education from TCU, alleges that she was harmed while in Texas, and only returned to Virginia when she was unsatisfied with Texas-based investigation, sanctions, and appeal. Therefore, the nexus between Jane's claim and her home forum is objectively weak.

Jane argues that the witness convenience factor is "at best, a wash" positing that her Virginia-based family and friends will be required to testify about Jane's reliance. ECF 17 at 16. Jane states without support that TCU "can secure the in-person attendance of its own employees at trial in Virginia." *Id*. She also claims that the number of flights between Fort Worth and Virginia establishes a lack of a burden of travel, ECF 17 at 17, but does not explain how the number of flights makes the trips any less expensive or shorter. While Jane frames this issue as "TCU's

witnesses" versus "Jane's witnesses," her Complaint – criticizing several TCU employees by name – demonstrates that Texas witnesses are vital to both parties' case.

Finally, Jane argues that the "interests of justice" favor keeping the case in Virginia because, she says, Virginia law will apply. *See* ECF 17 at 18-20. Jane's choice of law analysis presumes too much and is inherently flawed. First, if this matter is transferred the choice-of-law analysis will depend on whether this Court determines that venue is improper, or transfer is merely for the convenience of parties and in the interest of justice. If the former, Texas choice-of-law principles will apply. *Myelle v. Am. Cyanamid Co.*, 57 F.3d 411, 413 (4th Cir. 1995). Because jurisdiction, venue, and transfer are open questions, it is presumptuous for Jane to argue that Virginia law necessarily applies to all her claims. Second, Jane's preference for the application of Virginia substantive law does not constitute a justifiable basis for establishing venue and selecting the proper forum for the litigation. Jane's argument takes forum-shopping to a new level by asking this Court to give preference for one state's substantive legal theories of liability and its available remedies. On this record, the interests of justice, witness convenience, and the practical administration of a campus-focused dispute all point decisively to the Northern District of Texas.

## III. Jane Fails to State a Claim for Which She is Entitled to Relief.

### A. Jane has not Met Her Pleading Burden to Establish Fraud.

Jane bases both her VCPA and fraud claims on allegations that TCU misrepresented "the nature of its goods and services by stating that it 'works to provide a safe and supportive environment for students' and that it was 'committed to providing a[n] environment free from discrimination.'" ECF 17 at 22-21. To plead fraud or misrepresentation, a plaintiff must assert that the statement was false at the time the plaintiff relied on it and the statement was intentionally made with the intent to mislead. *See Hazaimeh v. United States Bank Nat'l Ass'n,* 94 F. Supp. 3d

741, 748 (E.D. Va. 2015). A fraud claim cannot be premised "on unfulfilled promises or statements about future events." *Id.* (citing *Albanese v. WCI Communities, Inc.*, 530 F. Supp. 2d 752, 770 (E.D. Va. 2007) (a fraud claim must be based on the misrepresentation of a present or pre-existing fact)). Jane's Complaint does not plead facts that were present at the time Jane applied for college to establish that TCU's statements were false when made with an intention to mislead.

Jane relies on "a litany of facts explaining why the statements were false, deceptive, and fraudulent when made." ECF 17 at 23. In particular, she draws the Court's attention to paragraph 19 of the Complaint, which consists of unsupported inferences this Court need not accept. Jane argues that statements in marketing materials she received were false at the time she reviewed them because of the school's "Squeaky Wheel" policy that applies "radically different treatment to its male and female students" because "male rapists and their families are more likely to raise a stink." ECF 1 ¶ 19. The majority of what Jane asks this Court to accept as true are not factual allegations, but Jane's opinions based on her own experience. Her experience, which took place after the alleged reliance on the statements, cannot establish that the statements were false at the time they were made. The only factual allegations that predate Jane's own experience are the inferences she appears to draw from TCU Board of Trustees' reports under Texas Senate Bill 212. ECF 1 ¶¶ 60-65. These reports do not make her claim that "rape and other sexual assault were rampant on the TCU campus and had been for years" a reasonable inference, as they do not provide information about how the numbers compare to other institutions of comparable size and location. ECF 1 ¶ 19(a). Jane omits that the reports state the numbers are comprised of "mandatory reports," "self-reports," and "confidential reports," and the reports "may or may not be duplicated in the overall reporting numbers." ECF 11, Ex. C at 1. Most concerningly, Jane wants to the Court to accept her allegation that "TCU's policy was and is to protect male students who rape" even though

the reports she cites do not include data on gender identity. ECF 11 Ex. C. It is implausible to infer from these reports that "TCU knew the school environment was neither safe nor supportive for women" or that TCU intentionally engaged in a practice of discrimination towards women. ECF 1 ¶¶ 19, 60-65. By contrast, *Garcia* was a known-harasser case, where the alleged representation and the concealed reality were tightly matched because the school allegedly already knew a specific professor was harassing female students and did nothing. *See Garcia v. ECPI Univ. LLC*, 814 F. Supp. 3d 639, 2026 U.S. Dist. LEXIS 7636 (E.D. Va. 2026). Here, Jane alleges broadly that the school is generally aware that third-party tortious conduct exists, which is in line with TCU's Office of Institutional Equity ("OIE") statements that it responds to reports of such conduct.

Further, even Jane's claim that "by design, TCU fails to investigate 97% of sexual assault allegations" is disingenuous, as the Board of Trustee Senate Bill 212 reports list exactly why each individual report of sexual assault was not investigated, if it was not investigated. For example, the Fall 2024 Report, referenced in paragraph 61 of the Complaint, provides a chart providing the reasons why reports did not initiate a disciplinary process, including but not limited to the complainant not responding to the OIE, the complainant declining to move forward, or the respondent not being affiliated with the University. ECF 11, Ex C. at 3. This Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000). Accordingly, Jane's Opposition fails to overcome the fatal defect in her pleading that, without any factual allegations showing the statement was false at the time TCU made it, Jane failed to plead misrepresentation or fraud.

**B. Jane is Pleading a Title IX Violation Under a Different Name**

Jane's Complaint and Opposition confirm that the gravamen of this case is a challenge to TCU's response to sexual harassment under the Title IX deliberate-indifference framework,

repackaged as state-law consumer-fraud and misrepresentation to evade Title IX's elements and remedial limits. The Complaint narrates a Title IX report to TCU's Office of Institutional Equity, an investigation, a hearing, a sanction the complainant deems inadequate, an internal appeal, and a later administrative letter, which are the archetypal factual predicates of a Title IX deliberate-indifference theory rather than a Virginia consumer-transaction dispute. Although Jane insists she is "the master of the complaint" and asserts the "gravamen" is consumer fraud, ECF 17 at 13, the law looks through labels to substance, and courts in this Circuit analyze institutional liability for campus harassment through Title IX's deliberate-indifference framework.

The Complaint's core narrative is inseparable from TCU's Title IX processes and decisions, not from any Virginia-based consumer performance or goods. Jane alleges she filed a formal complaint with TCU's OIE on October 15, 2024; faults the timing and conduct of the ensuing investigation; challenges the scheduling and conduct of the hearing; attacks the proportionality of the sanction; and contests the internal appeal's disposition. ECF 1 ¶¶ 31, 33, 34, 36-38, 41-45, 49, and 50. She then references internal Title IX case materials, including the hearing panel's written report and an administrative letter issued on July 10, 2025, to amplify her claim that TCU's institutional response was inadequate. ECF 1 ¶¶ 40 and 49. Jane's Opposition reiterates these same institutional-response allegations (i.e., delay, discouragement, humiliation in interviews, a lenient remedy, and a denied appeal) further confirming that her asserted wrong is TCU's alleged mishandling of a Title IX matter on its Texas campus. These are precisely the kinds of allegations that, under controlling authority such as *Jennings* and *Davis*, are evaluated through Title IX's deliberate-indifference standard. *See Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

Jane's damages theory underscores her attempted end-run around Title IX. She withdrew her intentional-infliction claim but expressly maintains a demand for emotional-distress recovery via her VCPA and fraud counts, which her Opposition candidly touts as permitting noneconomic damages unavailable under Title IX. ECF 17 at 16 *n.6. Yet, the Supreme Court in *Cummings* squarely held that Spending Clause statutes like Title IX do not authorize recovery of emotional-distress damages. *Cummings v. Premier Rehab Keller*, *P.L.L.C*., 596 U.S. 212, 221-22 (2002); *B.R. v. F.C.S.B.*, 718 F. Supp. 3d 504, 510 (E.D. Va. 2024) (applying *Cummings* to Title IX). Allowing Jane to proceed on VCPA and fraud claims that rise or fall on the adequacy of TCU's Title IX response, while seeking emotional-distress remedies foreclosed by *Cummings*, would permit precisely the kind of remedial circumvention that these authorities reject.

Because Title IX provides the analytical framework for imputing institutional liability for student-on-student harassment based on a school's response, the Court should treat Counts I and II as Title IX claims under different names and reject Jane's attempt to obtain Title IX-forbidden remedies through state-law labels. At minimum, the Court should evaluate these counts under Title IX's deliberate-indifference standards and remedial limits, including the unavailability of emotional-distress damages recognized in *Cummings*, rather than allow a state-law end-run around the federal scheme governing sex-discrimination in education.

### C. Jane Fails to State a Claim Pursuant to the VCPA

At the heart of Jane's VCPA claim is a consumer transaction in Texas. In a footnote, Jane argues that TCU "offers no support. . . [n]or can it" for this assertion. ECF 17 at 22 *n.12. She argues instead that by accepting TCU's offer of admission while she was still in Virginia, the transaction is wholly a Virginia transaction. This logic is flawed where the transaction is the provision of an education in Texas that required Plaintiff to leave her home in Virginia. There

would be no transaction if Jane did not move to Texas to receive the service TCU provides. Indeed, Jane's recitation of her factual allegation while discussing her VCPA claim highlights that it was a Texas transaction, challenging events that took place in Texas. ECF 17 at 23-24.[2]

Jane' attempt to deploy the VCPA to regulate a Texas university's handling of Texas campus conduct contravenes Virginia's choice-of-law rules and basic territorial principles. Under Virginia's *lex loci delicti* rule, the place of the wrong is where the last event necessary to impose liability occurs; here, the alleged failure to provide a "safe and supportive" environment and the asserted harms occurred in Texas.[3] Because the alleged wrong is the quality of educational services provided in Texas and the handling of her complaint in Texas, ECF 17 at 22-23, Texas law governs and the VCPA does not apply to police a Texas university's Texas conduct.

Even if Virginia law applied, the VCPA claim still fails under Federal Rule of Civil Procedure 9(b) because Jane did not plead with particularity the who, what, when, where, and how of any actionable misrepresentation. Jane quotes decontextualized snippets like "safe and supportive environment" and "environment free from discrimination" without citing specific brochures, URLs, dates, or speakers. This fails the Fourth Circuit's particularity requirements and does not identify the contents, timing, medium, or maker of the supposed false statements. The statements she does identify from the Office of Institutional Equity do not promise immunity from third-party misconduct. Rather, they describe OIE's role in responding to reports and providing a

[2] While not dispositive, TCU asks the Court to disregard Plaintiff's claim that "TCU did not lift a finger for over a month." ECF 17 at 24; ECF 1 ¶ 34. As noted in Defendant's Exhibit A, the Title IX Panel Hearing Deliberative Report, relied on by Plaintiff but not attached to her Complaint, TCU was not made aware of the sexual assault report until October 14, 2024, it interviewed Jane the same day, and interviewed the respondent November 5, 2024. ECF 1, Exhibit A.

[3] In contrast, ECPI University is based in Virginia and provided educational services to students in Virginia. *See Garcia v. ECPI Univ. LLC*, 814 F. Supp. 3d 639, 2026 U.S. Dist. LEXIS 7636 (E.D. Va. 2026).

framework for compliance, which is neither a guarantee of outcomes nor a warranty of absolute safety. Aspirational policy language and generalized descriptions of institutional goals are non-actionable because they are not guarantees susceptible of being proven false under Rule 9(b).

TCU's statements about OIE and its role and goals are in-part a reflection of its adherence to Title IX. 20 U.S.C. § 1681(a) states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." Here, Jane argues that "[w]hether TCU provides a safe, discrimination-free, and supportive environment for its female students (60% of the student body, *id*. ¶ 14) is a question of fact, provably true or false." ECF 17 at 27. In other words, Jane alleges that TCU discriminates on the basis of sex in direct violation of Title IX. What the court did not consider in *Garcia*, because it was not briefed, is whether the VCPA provides the correct analytical framework for the questions Jane raises. *See Garcia v. ECPI Univ. LLC*, 814 F. Supp. 3d 639, 2026 U.S. Dist. LEXIS 7636 (E.D. Va. 2026). Unlike a product liability case where a supplier misrepresents a physical attribute of a product to a consumer, analyzing discrimination is more nuanced. Jane should not be able to use the VCPA to circumvent the Supreme Court's guidance on how to analyze whether an education institution was deliberately indifferent to harassment. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643-50 (1999). Jane clearly seeks to relitigate her Title IX claim and the resulting sanctions. ECF 17 at 24. The proper avenue for such a claim is Title IX. The VCPA cannot apply simply because Plaintiff applied to a Texas-based institution to receive an education in Texas while she lived in Virginia.

**D. Jane Fails to State a Claim for Fraudulent Inducement**

Jane's Complaint fails to state a claim for either actual fraud or fraudulent inducement. Jane does not address the sufficiency of her actual fraud claim in her Opposition, which is therefore

conceded. As such, TCU will only address the sufficiency of Jane's claim for fraudulent inducement. As previously discussed *supra* III.C., under Virginia's choice of law rules, the substantive rights of parties in a tort action, including a fraudulent inducement claim, are governed by the law of the state where the last event necessary to make the actor liable occurred. Therefore, Texas law, where Jane suffered her alleged harm, governs. *See Insteel Indus. v. Constanza Contr. Co.*, 276 F. Supp. 2d 479, 486-87 (E.D. Va. 2003).

Under Texas law, fraudulent inducement is a separate category of actual fraud,[4] sharing the same elements, but including a "promise of future performance made with no intention of performing at the time it was made." *Mundheim v. Lepp*, No. 05-19-01490-CV, 2021 Tex. App. LEXIS 3786, at *9 (Tex. App. May 13, 2021). Fraudulent inducement only arises in the context of a contract, and it is important for a plaintiff to plead the existence of a contract to bring a fraudulent inducement claim. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Jane fails to allege facts to support that a contract existed between Jane and TCU that provided a guarantee of personal safety on campus or during university-sponsored events or activities.

Further, as alleged *supra* III.C., Jane's fraudulent inducement claim fails under Rule 9(b), as she does not plead her claim with particularity. Jane focuses on several fragmented statements from TCU OIE's website to argue that her Complaint sufficiently identifies the specific misrepresentations forming the basis for her fraudulent inducement claim. However, the operative clause for TCU's online statements is modified and misquoted. ECF 17 at 25. Jane does not provide

[4] Under Texas law, to sufficiently bring a claim for fraud, a plaintiff must allege: (1) the defendant made a material representation, (2) the representation was false, (3) when the representation was made, the defendant knew it was false or made it recklessly as a positive assertion without any knowledge of its truth, (4) the defendant intended to induce the plaintiff to act upon the representation, (5) the plaintiff actually and justifiably relied upon the representation, and (6) the plaintiff suffered injury as a result. *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)).

any context to the statements, including when they were made or when she learned of them.

Due to this flawed perspective and misconstrued view of TCU's online statements, Jane believes that (1) the statements can be proven false; and (2) TCU knew they were false. When OIE's online statements are viewed as a whole and in context, they are clearly describing OIE's role in responding to reports and framework for compliance, and that they are *not* a guarantee that TCU can and will control the actions of third-party actors on its campus. TCU, nor any other university, cannot act as *in loco* parentis guarantors of students' safety, and would be unwise to make such guarantees. Such statements are non-factual expressions that cannot be proven false,

Jane's renewed reliance on *Garcia* is unavailing.[5] The court's analysis in *Garcia* was done under the VCPA framework, not the elements of a fraudulent inducement claim. Unlike ECPI's statements in *Garcia*, TCU's OIE' statements discuss how OIE will address reports and complaints regarding allegations of discrimination and harassment, and its commitment to an environment free from discrimination. The attempts to misconstrue TCU's statements into a guarantee of a student's safety do not allow Jane to state a cause of action for fraudulent inducement.

Lastly, Jane's Complaint fails to adequately allege that her reliance on TCU's misrepresentations caused her alleged damages. In response to TCU's argument that Jane's injuries were the result of the sexual assault she suffered, Jane states that this argument ignores her financial injuries. Yet, she does not allege any facts to expand on said financial injuries. Her Complaint states the legal conclusion that "as a proximate result of TCU's fraud, Jane suffered…economic harm, as explained further below." Such conclusory allegations do not allow

[5] The court in *Garcia* assessed ECPI's "Sexual Harassment and Sexual Misconduct Policy," which stated: "ECPI University is committed to providing a teaching, learning, and working environment that is free from sexual harassment and sexual misconduct," and prohibited "sexual harassment and sexual misconduct," applying to all members of the ECPI community, including employees and students. *Garcia* at 644.

TCU to ascertain from the pleadings the nature and basic issues of the controversy and fail to put TCU on notice of the alleged harm. *Schlueter v. Carey*, 112 S.W.3d 164, 168 (Tex. App. 2003).

**E. Jane Fails to State a Claim for Breach of Contract.**

Jane alleges that the parties had an agreement to mediate in person before Judge O'Grady in Virginia, that TCU violated this agreement by failing to appear at the mediation, and that Jane suffered damages as a result. ECF 1 ¶ 53, 55, 90. Mediation is a voluntary, non-binding process that parties agree to participate in to save judicial resources and avoid court intervention. Virginia policy favors the private mediation of disputes and will enforce *mandatory mediation agreements*. *See Primov v. Serco, Inc.*, 96 Va. Cir. 121, 128 (Fairfax County 2017) (wherein the circuit court assessed a written contract between an employee and his employer, specifically a mediation provision that was found to be a "condition precedent" to filing suit). Despite this, Jane has not alleged the existence of a mandatory mediation agreement entered into by the parties, conflating voluntary and mandatory mediation agreements. Jane relies on *Sykes v. Nash Distribution, Inc.*, Civil Action No. 1:21-cv-897, 2021 U.S. Dist. LEXIS 264541, at *6 (E.D. Va. Dec. 2, 2021), and *Performance Food Grp. Co. v. Java Trading Co.*, No. 3:05CV447, 2005 U.S. Dist. LEXIS 50518, at *1 (E.D. Va. Oct. 4, 2005), but in both cases the parties had entered into written contracts containing mandatory mediation provisions, acting as condition precedents to litigation. Jane has not alleged the existence of such mandatory mediation provision between the parties.

Moreover, despite trying to frame the parties' willingness to attend mediation as a contract, Virginia law is clear that agreements to negotiate at some point in the future are unenforceable. *Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, 235 F. Supp. 2d 485, 490 (E.D. Va. 2002). Jane attempts to frame TCU's argument as one stating that the parties promised to *settle* the dispute, but TCU makes no such argument. An agreement to "'negotiate open issues in good

faith' to reach a 'contractual objective within [an] agreed framework' will be construed as an agreement to agree rather than a valid contract." *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 939 F. Supp. 2d 572, 578 (E.D. Va. 2013). An agreement to mediate is just that—an agreement to negotiate open issues in good faith and is thus unenforceable.

Finally, Jane relies on a recognized exception to the general rule that attorneys' fees may not be recovered by a prevailing litigant in certain contact actions, and that such fees are recoverable where "the breach compels a plaintiff to maintain or defend a suit with a third party." ECF 17 at 29. As there was no breach of contract in this matter, the recognized exception to recoverable attorneys' fees is inapplicable. Therefore, TCU is not liable to Jane for expenses she incurred for a mediation that did not go forward.

**CONCLUSION**

For the reasons set forth herein, Defendant Texas Christian University respectfully requests this Court grant its Motion to Dismiss or in the Alternative, to Transfer Venue.

Dated: May 21, 2026

Respectfully submitted,

**TEXAS CHRISTIAN UNIVERSITY**
By Counsel

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

*/s/ Jason R. Waters*

Jason R. Waters (VSB No. 73887)
Lauren E. Gilman (VSB No. 101558)
Nicole K. Rocha (VSB No. 100669)
8444Westpark Drive – Suite 510
McLean, VA 22102-5102
(703) 245-9300 (telephone)
(703) 245-9301 (facsimile)
Jason.Waters@wilsonelser.com
Lauren.Gilman@wilsonelser.com
Nicole.Rocha@wilsonelser.com
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of May 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing to all counsel of record:

Thomas M. Wolf (VSB No. 18234)
Joseph M. Rainsbury (VSB No. 45782)
Clarissa K. Pintado (VSB No. 86882)
O'Hagan Meyer, PLLC
411 E. Franklin Street, Suite 500
Richmond, Virginia 23219
(804) 361-4551 (telephone)
(804) 237-250 (facsimile)
twolf@ohaganmeyer.com
jrainsbury@ohaganmeyer.com
cpintado@ohaganmeyer.com
*Counsel for Plaintiff*

Alison C. Duffy (VSB No. 90113)
O'Hagan Meyer, PLLC
256 Huntington Ave., Suite 204
Alexandria, VA 22303
(703) 775-8606 (telephone)
aduffy@ohaganmeyer.com
*Counsel for Plaintiff*

*/s/ Jason R. Waters*
Jason R. Waters (VSB No. 73887)
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
8444Westpark Drive – Suite 510
McLean, VA 22102-5102
(703) 245-9300 (telephone)
(703) 245-9301 (facsimile)
Jason.Waters@wilsonelser.com
*Counsel for Defendant*