**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **JANE DOE,** *Plaintiff*, | ) | |
| v. | ) | Case No. 1:25-cv-2299-RDA |
| **TEXAS CHRISTIAN UNIVERSITY,** *Defendant*. | ) | |

**THE COMMONWEALTH OF VIRGINIA *EX REL.* JAY JONES, ATTORNEY GENERAL'S *AMICUS CURIAE* BRIEF IN SUPPORT OF THE PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE**

Jay Jones,
*Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile

Helen O. Hardiman
*Deputy Attorney General*
*Public Advocacy Division*

Joelle E. Gotwals
*Senior Assistant Attorney General*
*Consumer Protection Section*

*Counsel for* Amicus Curiae *Commonwealth of Virginia*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION AND INTERESTS OF *AMICUS CURIAE* ........ 1

ARGUMENT ........ 2

I. The Plain Language of the VCPA Supports its Application to Non-Virginians ........ 2

II. Under Conflict of Law Principles, the VCPA is the Controlling Law for Consumer Transactions Where Either the Company or the Consumer is in Virginia ........ 5

CONCLUSION ........ 7

CERTIFICATE OF SERVICE ........ 9

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ballagh v. Fauber Enter.*
290 Va. 120, 773 S.E.2d 366 (2015) ....................4, 6

*Conyers v. Martial Arts World of Richmond, Inc.*,
639 S.E.2d 174 (Va. 2007) ....................3, 4

*Erie R. Co*. v. *Tompkins*,
304 U.S. 64 (1938) ....................3

*Frye v. Commonwealth,*
231 Va. 370, 345 S.E.2d 267 (1986)....................6

*Hazelwood v. Lawyer Garage, LLC*,
81 Va. App. 586, 904 S.E.2d 322 (2024)....................7

*Landholt v. Corley*,
149 F.4th 486 (4th Cir. 2025) ....................3

*Manu v. GEICO Cas. Co.*,
293 Va. 371, 798 S.E.2d 598 (2017)....................5

*McMillan v. McMillan*,
219 Va. 1127, 253 S.E.2d 662 (1979)....................5, 6

*Owens v. DRS Auto. Fantomworks, Inc.*,
288 Va. 489, 764 S.E.2d 256 (2014)....................1, 6, 7

*Quillen v. International Playtex, Inc.*,
789 F.2d 1041 (4th Cir. 1986) ....................7

*Van Dusen v. Barrack*,
376 U.S. 612, 637 (1964) ....................3

*What Hurts, LLC v. Volvo Penta of the Ams., LLC*,
710 F. Supp. 3d 502 (E.D.V.A. 2024) ....................3

**Statutes**

Va. Code § 59.1-196 through 5.1-207 ....................1

Va. Code § 59.1-197 ....................1, 3, 5

Va. Code § 59.1-198 ........................................ 1, 4

Va. Code § 59.1-200 ........................................ 4

Va. Code § 59.1-203 ........................................ 2

Va. Code § 59.1-204 ........................................ 1, 7

Va. Code § 59.1-204(A) ........................................ 4

Va. Code § 59.1-205 ........................................ 2, 4, 7

Va. Code § 59.1-206 ........................................ 2

**Treatises**

Restatement (First) of Conflict of Laws § 64 (AM. LAW INST. 2017) ........................................ 6

## INTRODUCTION AND INTEREST OF *AMICUS CURIAE*

This *amicus curiae* brief is submitted by the Commonwealth of Virginia, *ex rel.* Jay Jones, Attorney General ("Commonwealth" or "Attorney General") to assist this Court in its consideration of the Defendant's Motion to Dismiss or, in the Alternative, Transfer Venue and the Plaintiff's Opposition thereto. [Dkt. Nos. 10, 11; 17].

The General Assembly enacted the Virginia Consumer Protection Act ("VCPA"), Virginia Code §§ 59.1-196 through 59.1-207, with the express purpose that it serve as "remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code § 59.1-197. With the VCPA, the legislature created new remedies for consumers; removed restrictions imposed by the common law, including common law fraud; and provided for civil enforcement actions by government attorneys in the Commonwealth.

In *Owens v. DRS Automotive Fantomworks, Inc.*, the Virginia Supreme Court recognized that "the legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law." 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014). In this regard, the VCPA prohibits a variety of acts and practices committed by "suppliers" in connection with "consumer transactions," as those terms are defined in Virginia Code § 59.1-198.[1] Further, the General Assembly created new statutory causes of action for the purpose of enforcing the protections afforded by the VCPA—including a private right of action, and government enforcement measures. *See* Va. Code § 59.1-204 (individual action

---

[1] The VCPA defines "supplier" as "a seller, lessor, licensor, or professional that advertises, solicits, or engages in consumer transactions, or a manufacturer, distributor, or licensor that advertises and sells, leases, or licenses goods or services to be resold, leased, or sublicensed by other persons in consumer transactions" and a "consumer transaction" as, in relevant part, "[t]he advertisement, sale, lease, license, or offering for sale, lease, or license, of goods or services to be used primarily for personal, family, or household purposes." Va. Code § 59.1-198.

for damages, attorneys' fees, and costs); §§ 59.1-203, 205, 206 (government enforcement action for injunction, restitution, and civil penalties for willful violations, expenses, attorneys' fees, and costs).

As the primary constitutional officer in Virginia charged with enforcing the VCPA, the Attorney General has a significant interest in ensuring that the statute is properly construed and that its remedial purpose is not frustrated. This interest includes addressing the scope of the VCPA for both consumers and suppliers; in particular, the extraterritoriality of its reach where either the consumer or the supplier business resides outside the borders of the Commonwealth. The Attorney General maintains, and has maintained in enforcement actions brought in the Commonwealth and elsewhere, that the protections and requirements of the VCPA apply when either the consumer who was deceived *or* the business perpetrating the deception is in Virginia. This position is supported by the plain language of the statute and its express remedial intent, and any other interpretation would be inconsistent with the same. Because this Court's determination on the applicability of the VCPA to the plaintiff's allegations—and thus whether a viable claim under the VCPA has been stated—may affect future enforcement actions brought by the Attorney General, the Commonwealth submits this *amicus curiae* brief in support of the Plaintiff's Opposition.[2]

## ARGUMENT

### I. The VCPA Applies Extraterritorially to Non-Virginians

The question of whether the VCPA can be applied extraterritorially by either (1) a Virginia consumer allegedly misled or deceived by a non-Virginia supplier; or (2) a non-Virginia resident

---

[2] The Commonwealth's *amicus curiae* brief is limited to the issue of whether the VCPA can be extended to the claims brought by the Plaintiff, a resident of the Commonwealth, to the Defendant, a non-Virginia entity. It takes no position on any other aspect of the Plaintiff's Opposition, including whether this Court otherwise has personal jurisdiction over the Defendant.

consumer allegedly deceived by a Virginia-based supplier is one that can be answered affirmatively based on the plain language of the VCPA and its clear statutory intent.

According to the Supreme Court of Virginia,[3] "[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (internal citations omitted); *see also What Hurts, LLC v. Volvo Penta of the Ams., LLC*, 710 F. Supp. 3d 502, 526 (E.D. Va. 2024). The language of the VCPA and its meaning are clear: there are no territorial limits within the statute itself.[4]

As noted above, the VCPA governs transactions between "suppliers and the consuming public." Va. Code § 59.1-197. Notably, the statutory language does not state "the consuming public *in Virginia*," and it does not impose any other geographical limitation of its scope. In its private right of action, the VCPA permits "[a]ny *person* who suffers loss as the result of a violation" to

---

[3] The *Erie* doctrine, as articulated in *Erie R. Co*. v. *Tompkins*, 304 U.S. 64 (1938) and its progeny, declares that federal courts sitting in diversity "are to apply the laws of the states in which they sit." *Van Dusen v. Barrack*, 376 U.S. 612, 637 (1964) (internal citations omitted). In particular, with respect to statutory interpretation, this doctrine states that "[w]hen a state's highest court interprets a statute, we are bound by the state court's interpretation, and must assume that the statute says what the state courts say it says." *Landholt v. Corley*, 149 F.4th 486, 490 (4th Cir. 2025) (internal citations omitted).

[4] The Commonwealth does not argue that the statutory language of the VCPA, however broad, negates the independent due process and civil procedure requirements for personal jurisdiction or proper venue. Instead, the Commonwealth simply argues that, assuming sufficient facts have been alleged to establish jurisdiction and venue, a viable cause of action for violation(s) of the VCPA is not precluded simply because of the residence of either the consumer *or* the supplier business.

bring an action for damages, and does not define "person" as applying only to Virginia consumers. Va. Code § 59.1-204(A).[5] Rather, the statute defines the term broadly to include "*any* natural person, corporation, trust partnership, association and any other legal entity." Va. Code § 59.1-198 (emphasis added). In similar fashion, the VCPA's definition of "supplier" is not limited to those who headquarter their business in Virginia. A "supplier" is defined as, *inter alia*, "a seller, lessor, licensor, or professional that advertises, solicits, or engages in consumer transactions," without any language limiting suppliers to those who engage in their consumer transactions from within the Commonwealth. *Id*. Accordingly, any supplier who advertises or offers for sale goods or services, where those goods or services reach a consumer in the Commonwealth, would be subject to the VCPA for any misrepresentations or deception perpetrated on the consuming public.

Moreover, even if the plain language of the VCPA did not clearly support an interpretation of extraterritoriality, its demonstrable legislative intent does. "If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute." *Conyers*, 273 Va. at 104. As noted above, when the Virginia General Assembly enacted the VCPA, it included within the statute its intent that the VCPA operate as "remedial legislation." In interpreting the VCPA, the Virginia Supreme Court has highlighted this express remedial purpose as a hallmark of its construction. As it stated in *Ballagh v. Fauber Enter.*:

> The legislature seldom chooses to expressly direct the courts how to apply a statute. When it does so we must pay special attention to that choice and ensure that it is given full effect. The General Assembly chose to include such direction in the VCPA. It declared that the VCPA "shall be applied as *remedial legislation* to promote fair and ethical standards of dealing between suppliers and the consuming public." Code § 59.1-197. We construe remedial legislation *liberally,* in favor of the injured party.

---

[5] The relief that may be sought by the Attorney General for consumers is similarly broad: the VCPA authorizes restitution "to restore to *any identifiable person* any money or property . . . which may have been acquired from such *person*, by means of an act or practice declared to be unlawful in § 59.1-200 . . . ." Va. Code § 59.1-205 (emphasis added).

290 Va. 120, 125, 773 S.E.2d 366, 368 (2015) (emphasis added).

Giving full effect to the General Assembly's intent with the VCPA necessitates a broad interpretation of its definitions, application, and reach. Remedial legislation in the Commonwealth, such as the VCPA, is to be "liberally construed so that the purpose intended may be accomplished," and "read as to promote the ability of the enactment to remedy the mischief at which it is directed." *Manu v. GEICO Cas. Co.*, 293 Va. 371, 389, 798 S.E.2d 598, 608 (2017) (citations and internal quotation marks omitted). The General Assembly's purpose, in this instance, is clear—to "promote fair and ethical standards of dealing" for consumers—as is the mischief to be remedied. The VCPA is a statute designed to protect consumers from misrepresentations and deception by suppliers, including those where either the consumer *or* the supplier is outside Virginia.

**II. Under Conflict of Law Principles, the VCPA is the Controlling Law for Consumer Transactions Where Either the Company or the Consumer is in Virginia**

In addition to the question of the VCPA's extraterritoriality, this Court must determine whether the Virginia law—namely, the VCPA—applies in the instant case under a conflict-of-laws analysis.[6] Both parties in this matter have asserted that *lex loci delecti* applies, though they reach different conclusions. *Lex loci delecti*, the "settled rule in Virginia," states that "the substantive rights of the parties in a multistate tort action are governed by the law of the place of the wrong." *McMillan v. McMillan*, 219 Va. 1127, 1128, 253 S.E.2d 662, 663 (1979).

Virginia's application of the doctrine of *lex loci delecti*, while appropriate to questions of tort law such as common law fraud, is not necessarily pertinent to claims arising under the VCPA.

[6] Though the parties cite different reasons for why this court must apply choice of law principles—the plaintiff citing case law on federal courts sitting in diversity, and the defendant relying on supplemental jurisdiction authority—Virginia choice of law principles must nevertheless be applied. *See* Dkt No. 11 at 17-18 and Dkt, No. 17 at 18-19.

The Virginia Supreme Court has repeatedly held that the VCPA's "proscription of conduct . . . extends considerably beyond fraud," *Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. at 497, and creates a "new, statutory cause of action distinct from and in addition to common law fraud." *Id.; see also Ballagh*, 290 Va. at 124. Thus, where a plaintiff alleges that a defendant has engaged, and is engaging, in activities that constitute violations of statutory law, a discussion of *lex loci delecti* does not control.

Instead, traditional conflict of law principles—as articulated in the Restatement (First) Conflicts of Law—recognize that states have legislative jurisdiction to "provide for the creation of interests as a result of acts done in the state or of events which happen there." Restatement (First) of Conflict of Laws § 64 (AM. LAW INST. 2017) (emphasis added); *see McMillan*, 219 Va. at 1130-31 (Virginia adheres to the traditional conflict of laws rules and does not adopt the Restatement (Second)).[7] Furthermore, "if consequences of an act done in one state occur in another state, each state in which any event in the series of acts and consequences occurs may exercise legislative jurisdiction to create rights or other interest as a result thereof." Restatement (First) Conflict of Laws § 65 (AM. LAW INST. 2017). The Virginia General Assembly, through its enactment of the VCPA, has used its authority to allow plaintiffs to bring actions against suppliers outside of the Commonwealth, and extend that law to their misrepresentations in Virginia. The creation of this statutory action that extends "considerably beyond fraud," *Owens*, 288 Va. at 497; *Ballagh*, 290 Va. at 124, empowers Virginia consumers to apply the Commonwealth's laws to foreign suppliers whose misrepresentations or deception reach those consumers.

---

[7] *See also Frye v. Commonwealth,* 231 Va. 370, 376, 345 S.E.2d 267 (1986): "In cases involving choice-of-law questions, Virginia adheres to the use of traditional rules applicable to conflicts of laws."

However, even if this Court were to determine that Virginia's standard application of *lex loci delecti* was appropriate, this principle articulates that the "place of the wrong" is where "the last event necessary to make an act liable . . . takes place." *Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986); *see also Hazelwood v. Lawyer Garage, LLC*, 81 Va. App. 586, 597-98 (2024). In the context of a VCPA action under Virginia Code § 59.1-204, the Virginia Supreme Court has determined that the last element of liability that a consumer must prove is reliance. *Owens,* 288 Va. at 497-98.[8] In other words, wherever the consumer relied on the misrepresentation or deception of the supplier—as evidenced by any action or inaction on the part of the consumer—is the "place of the wrong." When a consumer resides in Virginia, and is misrepresented to or deceived in Virginia, that place will be Virginia, regardless of where the supplier is located.

**CONCLUSION**

The plain language of the VCPA is clear: its prohibitions and protections extend beyond the borders of the Commonwealth. Its remedial legislative purpose would be frustrated by any determination that its broad language did not reach out-of-state suppliers for alleged misrepresentations that reached Virginia. For a consumer in Virginia, rules governing conflict of laws also support the VCPA's application to wrongs committed here. The Commonwealth respectfully requests this Court consider its analysis when ruling on Defendant's Motion to Dismiss or, in the Alternative, Transfer Venue and the Plaintiff's Opposition thereto.

[8] The Commonwealth notes that, in the context of a government enforcement action, the plain language of the VCPA does *not* require a showing of reliance by the Commonwealth. *Compare* Va. Code § 59.1-204, providing damages for "[a]ny person who suffers loss *as the result of* a violation" with Va. Code § 59.1-205, authorizing restitution to "any identifiable person any money or property, real, personal, or mixed, tangible or intangible, which *may have been acquired* from such person *by means of* any act or practice declared to be unlawful . . . ." (emphasis added).

Respectfully submitted,

By: ______*/s/ Joelle E. Gotwals*__________
Joelle E. Gotwals

COMMONWEALTH OF VIRGINIA
*EX REL.* JAY JONES,
ATTORNEY GENERAL

Jay Jones
Attorney General

Travis G. Hill
Chief Deputy Attorney General

Helen O. Hardiman
Deputy Attorney General

Richard S. Schweiker, Jr.
Senior Assistant Attorney General and Chief
Consumer Protection Section

Joelle E. Gotwals (VSB # 76779)
Senior Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Phone: (804) 786-8789
Facsimile: (804) 786-0122
jgotwals@oag.state.va.us

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of May 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing to all counsel of record:

Thomas M. Wolf, Esq.
O'Hagan Meyer, PLLC
411 E. Franklin Street, Suite 500
Richmond, Virginia 23219
(804) 361-4551 (telephone)
(804) 237-250 (facsimile)
twolf@ohaganmeyer.com
*Counsel for Plaintiff*

Jason R. Waters, Esq.
Lauren E. Gilman, Esq.
WILSON ELSER MOSKOWITZ
EDLEMAN & DICKER, LLP
8444 Westpark Drive, Suite 510
McLean, VA 22102-5102
Tel: (703) 245-9300
Fax: (703) 245-9301
Jason.Waters@wilsonelser.com
Lauren.Gilman@wilsonelser.com
*Counsel for Defendant*

______*/s/ Joelle E. Gotwals*__________
Joelle E. Gotwals